**UNITED STATES of America,**
**Appellee,**

v.

**Anthony CARTANO, a/k/a etc.,**
**Defendant, Appellant.**

**No. 7409.**

United States Court of Appeals
First Circuit.

Heard Dec. 3, 1969.

Decided Jan. 12, 1970.
Certiorari Denied April 20, 1970.
See 90 S.Ct. 1398.

Walter Powers, Jr., Bostom, Mass., by appointment of the Court, with whom B. Joseph Fitzsimmons, Jr., Weymouth, Mass., was on brief, for appellant.

Edward J. Lee, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

On November 15, 1967, John Policronis, the manager of Post Cafeteria Number Two at the Boston Army Base, was brutally beaten about the head with a steel knife sharpener. He died of his wounds three days later.

On November 17, 1967, the day before the victim died, a federal commissioner's complaint and arrest warrant were issued for the defendant. The complaint charged him with the beating and alleged the commission of a crime on a federal reservation, to wit, assaulting Policronis with a dangerous weapon.[1] As hereinafter appears, by that date defendant had already disappeared and his whereabouts were unknown.

The government presented the case to the grand jury on May 23 and 24, 1968, and an indictment for first degree murder was returned against the defendant on June 7, 1968. He was brought to trial on July 28, 1969, found guilty as charged and sentenced to life imprisonment. He now appeals from that judgment.

Defendant contends, first, that the trial court erred in denying his motion to dismiss for unreasonable delay in (1) seeking an indictment; (2) bringing the case to trial; and (3) conducting a pretrial psychiatric examination. The delays, it is argued, amount to a deprivation of defendant's constitutional right to a speedy trial. We cannot agree.

We need not stop to dissect the period between the commission of the crime and the trial to dispose of the constitutional argument. It is well-established that there is no constitutional deprivation where, as here, the delay was relatively short and there is no showing that the delay was improperly motivated or prejudicial to the defendant. Carroll v. United States, 392 F.2d 185 (1st Cir. 1968); Fleming v. United States, 378 F.2d 502 (1st Cir. 1967); see Schlinsky v. United States, 379 F.2d 735 (1st Cir.), cert. denied, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967). This record is devoid of any evidence showing the existence of either factor.

It has been held that Fed.R. Crim.P. 48(b) sets a more exacting standard than the Sixth Amendment. E. g., Mathies v. United States, 126 U.S. App.D.C. 98, 374 F.2d 312, 314-315 (1967). However, the denial of a motion to dismiss under the Rule, for a delay which falls short of a constitutional defect, will be reversed only on a showing of an abuse of discretion. York v. United States, 389 F.2d 761 (9th Cir. 1968), Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964). A review of the history of this case indicates that no such showing has been made. Defendant's whereabouts were unknown to the government from the time of the crime until September 4, 1968, when the federal authorities learned he was in custody

1. 18 U.S.C. § 113(c) (1964).

in North Carolina.[2] On February 18, 1969, the government obtained a writ of habeas corpus ad prosequendum in an effort to bring defendant to trial. The writ was returned unsatisfied on March 6, 1969, because defendant was under treatment in the North Carolina prison mental hospital. On April 14, 1969, another writ was obtained and defendant was returned to the District of Massachusetts on April 22. On May 7 the trial court committed him to the Medical Center for Federal Prisoners for a psychiatric examination to determine his competency to stand trial. Although the court's order called for a report within forty-five days, it was not received until July 7 and defendant was not returned to the District until July 19. On July 28 he went to trial.

Defendant cannot complain of any delay attributable to his flight or unavailability. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 2.3(e) (Tent. Draft 1967). The interval used to obtain a psychiatric examination of defendant was clearly necessary to the proper discharge of the court's duties in this case. United States v. Davis, 365 F.2d 251 (6th Cir. 1966); Mackey v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965); see Hodges v. United States, 408 F.2d 543 (8th Cir. 1969). Much of the delay in seeking defendant's return from North Carolina for trial (September 1968 through February 1969) is explicable by the fact that no juries were impanelled in the District of Massachusetts between December 22, 1968, and February 12, 1969, due to the implementation of the Jury Selection and Service Act, 28 U.S.C. §§ 1861–1874 (Supp. IV, 1968). Such a delay, is not, of course, "unnecessary" for purposes of Rule 48. The three and one-half months between September 4 and December 22 is, however, unexplained and we shall assume it was unnecessary. Hence, the bulk of the delay which can fairly be termed "unnecessary" is only three and one-half months between the time defendant's whereabouts became known and December 22, 1968, when, for valid reasons, jury trials were temporarily discontinued in the district. In view of the absence of prejudice and of improper governmental motive, and the shortness of the delay we are unable to hold that the trial court abused its discretion by refusing to dismiss.

Next, defendant claims that the admission in evidence of four photographic slides, vividly depicting the victim's head injuries, was improper. The slides were taken by the medical examiner at the autopsy and were introduced in conjunction with his testimony.

 It is settled that demonstrative evidence which tends to prove a material issue is admissible if its probative value outweighs its prejudicial tendency.[3] That determination is within the sound discretion of the trial court. Here there was ample evidence from which the court could have concluded that the slides were probative of issues in the case. During the cross-examination of one of the government's medical witnesses, who stated that the victim's injuries were consistent with multiple blows to the head with a blunt object, counsel suggested that the cause of death might have been cardiac arrest or blows caused by a fall on the floor, against a radiator or sink, or from a chair. The slides were offered to show the nature, location and number of wounds on the head. We think they tend to refute such a hypothesis. We cannot,

---

2. He had been arrested there on August 27.

3. Harried v. United States, 128 U.S.App. D.C. 330, 389 F.2d 281 (1967); Maxwell v. United States, 368 F.2d 735 (9th Cir. 1966); Rivers v. United States, 270 F.2d 435 (9th Cir. 1959), cert. denied, 362 U.S. 920, 80 S.Ct. 674, 4 L.Ed.2d 740 (1960); Eagleston v. United States, 172 F.2d 194, 12 Alaska 213 (9th Cir.), cert. denied, 336 U.S. 952, 69 S.Ct. 882, 93 L.Ed. 1107 (1949); Jarabo v. United States, 158 F.2d 509 (1st Cir. 1946); J. Wigmore, Evidence §§ 792, 1157 (3d ed. 1940).

therefore, conclude that the trial court abused its discretion in admitting the photographs.

 After arguments of counsel and the court's charge, defendant requested, and was denied, an opportunity to make an unsworn statement to the jury. He argues that this denial violated a long-standing rule and tradition and deprived him of his constitutional right to due process of law.[4]

The practice of making an unsworn statement to the jury developed at a time when a criminal defendant was incompetent as a witness in his own behalf. It thereby avoided convicting defendants without affording them an opportunity to tell their version of the incident in question, a most basic element of fair criminal procedure. With the abolition of the incompetency rule, however, the rationale supporting the use of unsworn statements disappeared. *See* Ferguson v. Georgia, 365 U.S. 570, 585–586, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Today a defendant may testify in his own behalf.[5] Hence there is no unfairness in preventing him from making an unsworn statement to the jury. Indeed, a contrary rule might be unfair to society. It would permit a defendant to pick and choose, determining which portions of his story he will tell on the witness stand, where he is subject to cross-examination, and which he will save for the jury, where anything he may say cannot be challenged. We hold, therefore, that the trial court was correct in denying defendant's request to address the jury.[6]

Nor are we impressed with defendant's final point, viz., that the trial court abused its discretion in denying his motions for judgment of acquittal and for a new trial. Suffice it to say that we have reviewed the record in detail and have concluded that there was ample evidence to warrant the jury in finding that the defendant was guilty as charged.

Affirmed.

---

4. In deciding this question, we apply the standard enunciated recently by the Supreme Court in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). There, in determining whether due process required trial by jury in criminal cases, the test was said to be whether "a particular procedure is fundamental—whether, that is, a procedure is necessary

to an Anglo-American regime of ordered liberty." 391 U.S. 149–150 n. 14, 88 S.Ct. 1448.

5. Indeed, defendant did so in this case.

6. This conclusion is consistent with the practice of the federal courts and all the states save Massachusetts. Ferguson v. Georgia, *supra*, at 586 n. 17, 81 S.Ct. 756.