**UNITED STATES of America, Appellant,**

v.

**Joseph Fernandes CORREIA et al.,
Defendants-Appellees.**

No. 75–1390.

United States Court of Appeals,
First Circuit.

March 18, 1976.

Robert B. Collings, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., was on brief for appellant.

Robert F. Muse, Boston, Mass., with whom Frank P. Marchetti, Boston, Mass., was on brief for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The government appeals under 18 U.S.C. § 3731 from an order dismissing an indictment because of the prosecution's inability to proceed to trial at a continued date certain. The inability lay in the government's failure to locate the key witness. We hold that the district court did not abuse its discretion.

The relevant sequence of events is the following. On March 26, 1975, defendants were indicted. On June 25, the case was set for trial on August 11. At this time the key witness was known to be in custody of a youth facility in Maine to which he had been committed by Massachusetts authorities, and had indicated that he was willing to testify. The prosecution had planned to issue a writ of habeas corpus ad prosequendum on or about July 28. At that time it learned that the witness had been released and vainly sought for him at his parents' and sister's residences in Charlestown. Two days before the scheduled trial date the FBI elicited the cooperation of the Boston police, but to no effect.

A hearing was held on August 11, on the government's motion for continuance, a jury standing ready to hear the case. The witness had, a few days earlier, talked to defense counsel, who had advised him to seek legal advice.[1] The witness' whereabouts, however, was unknown although he was reputed to be in the area. The court urged the prosecution to ascertain whether the witness would be available and willing

---

1. There is no suggestion on the record that the defendants or their attorneys encouraged the missing witness to disappear. On the contrary, the record reflects that the defense attorneys cooperated in efforts to locate the witness.

to testify; if the witness, for good reason, would not testify, the government was urged to move for dismissal. As the court put it, "Next time we either fly or we don't fly", to which the prosecutor responded; "I understand". Defense counsel, while objecting to a continuance, conceded that they could point to no prejudice if the case were continued. Court and counsel then discussed some five dates in September. The court asked defense counsel to intercede with a state judge to cancel a trial assignment for September 8 and announced that the case would commence on September 9. The jury was then dismissed.

On August 12, the day after the above hearing, the court denied the government's motion for a material witness warrant. From August 12 to 22 a special agent of the FBI visited, once or twice a day, the homes of the witness' parents and sister, without seeing any of them. On August 25, the witness' mother, finally being contacted, said that her son's awareness of attempts to serve him with a subpoena was the reason for his non-availability. The agent kept the mother's house under some surveillance during the week following, to no effect. Finally, on Thursday, September 4, the government asked for and received a material witness warrant, and the FBI did some searching in Somerville. On the following Tuesday, September 9, the prosecution reported its failure to find its witness, stated it would be unable to try the case without the witness, and urged a further continuance of fifteen more days, to September 24. This would be four days before the expiration of 180 days since defendants were indicted—the period within which defendants, absent justification, should have been brought to trial under the Rule 50(b) plan of the District of Massachusetts for the prompt disposition of criminal cases.

The court, noting that the prosecution still could not represent that the witness

would testify if located, refused any further continuance.[2] In its written order of September 10 dismissing the indictment, it referred to the continuance granted on August 11 "with the understanding that no further continuances would be granted". The government appeals the dismissal.

■ At the outset we note a problem in our appellate jurisdiction. The period of limitations not having expired, the dismissal not having been ordered on constitutional grounds, and the defendant not having been put in jeopardy, there is no barrier to the government's reindicting defendant. Although the order of dismissal did not so specify, it was without prejudice under these circumstances. *United States v. Clay*, 481 F.2d 133, 135 (7th Cir. 1973). Unlike the situations in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) and in *Clay, supra*, the ruling of the district court was not premised on undue delay prior to the indictment—which, if correct, was beyond the power of the government to cure. There is therefore a lack of finality which arguably divests the order of appealability. *Clay supra*, 481 F.2d at 135–37. *See also* 8A J. Moore, Federal Practice, § 48.05. Nevertheless, since the 1971 amendment to 18 U.S.C. § 3731, the language of the statute allowing appeals by the United States includes, without restriction, all dismissals of indictments where jeopardy has not attached, and is to be "liberally construed". The issue of appellate jurisdiction was not argued or briefed. We do not pass on this issue at this time but assume arguendo that we have jurisdiction, and address the merits. We are prompted so to proceed since, at this juncture, when trial judges face new statutory pressures for the prompt disposition of criminal cases, there is utility in making known to district judges and prosecution and defense counsel our views of the power of district courts to manage their dockets.

---

**2.** As the witness was described as a co-perpetrator of the charged crime, he could have been expected to invoke the Fifth Amendment privilege against self-incrimination. At oral argument in this court, the government revealed

that it was prepared to immunize the missing witness in order to compel his testimony. No such suggestion having been made to the trial court, its prophecy of futility was reasonable.

On the merits, the government protests that the action of the district court constitutes an abuse of discretion. It argues that dismissal under Fed.R.Crim.P. 48(b) was not justified because there was no unnecessary delay caused by the government, no claim of prejudice on the part of the defendants, and no violation of the time limits for prosecution imposed by court rule.[3] Although this case was briefed and argued on the assumption that Rule 48(b) provided the sole authority for the district court's action in this case, we find, upon review, that the policies underlying Fed.R.Crim.P. 50 and the Speedy Trial Act, 18 U.S.C. §§ 3161-74 are also involved.

The district court did not expressly purport to dismiss the indictment pursuant to Rule 48(b). It was clearly the court's view, expressed in its order of September 10, that an understanding had been reached among all concerned that a second continuance would not be granted to the government on September 9. The court's action, in dismissing the indictment, merely enforced this understanding. The threshold question, then, is whether the district court abused its discretion in refusing to grant the government a second continuance. If the denial of the continuance was such an abuse, the dismissal, which has no other justification, must also fail. If the denial was proper, we then must address whether the dismissal was a proper enforcement mechanism under the circumstances of this case.

■ It is axiomatic that the district court has inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion. *See United States v. Inman,* 483 F.2d 738 (4th Cir. 1973); *United States v. Clay, supra* at 137; Comm. Note to Rule 50, 8A J. Moore, Federal Practice at 50-2. The power to grant or deny a continuance is a basic tool committed to the discretion of the trial court to effectuate this purpose. *United States v. Inman, supra* at 740. In recent

years, since the promulgation of Fed.R. Crim.P. 50(b) which provides for plans for the prompt disposition of criminal cases, and since the passage of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-74, the district courts are under significant pressure to exercise their powers so that cases may be concluded within the specified time limits. *Cf. United States v. Bragan,* 499 F.2d 1376, 1378 (4th Cir. 1974). Thus, motions for continuance are denied today, which a few years ago, would have been routinely allowed.

■ Of course, the discretion of the trial judge to deny a continuance is not without restriction. In previously reported cases, which involve denials of defendants' motions, the limits on the district court's discretion to deny a continuance have been imposed by the defendant's constitutional rights to assistance of counsel, to the testimony of witnesses on his behalf, or to a trial free of prejudicial publicity. *See Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931 (1964); *United States v. Inman, supra* at 740; *Rastrom v. Robbins,* 440 F.2d 1251 (1st Cir. 1971); *Leino v. United States,* 338 F.2d 154, 156 (10th Cir. 1964). The government, unlike defendants, cannot point to specific constitutional guarantees to support its claim that the action of the district court was an abuse of discretion. But it is indisputable that the government has a strong interest in prosecuting a defendant on a valid, pending indictment with a trial counsel who is prepared on the facts and the law of the case, and has available the essential witnesses. This interest cannot be lightly disregarded by the district court in considering a motion for a continuance.

■ Applying these principles to the circumstances of the case at bar, we conclude that there was no abuse of discretion in denying the government's motion for a continuance on September 9. The trial court was not arbitrary in setting the continued trial date; four weeks to locate a witness in

---

**3.** The Plan for the Prompt Disposition of Criminal Cases adopted by the U. S. District Court for the District of Massachusetts, pursuant to Fed.R.Crim.P. 50(b). According to the plan, dismissal under Rule 48(b) is an appropriate sanction for violations of the plan's time limits.

the Charlestown area was reasonable in prospect and conceivably could have been sufficient had a greater effort been made; a settled understanding had been reached that trial was to proceed on September 9. While the government reads that August 11 transcript as indicating only a "best efforts" commitment on its part, we think that the court's view of the understanding was a permissible and supported one.

Finally, apart from the understanding, the government's entitlement to a further continuance on September 9 was dubious. To the extent the government argued that it had exercised due diligence in searching for the missing witness from August 12 to September 9, it undercut its ability to represent to the trial court that a further continuance would enable it to secure the presence of the witness for trial who would be willing to testify. This representation is required under Local Rule 16(c)(2). On the other hand, if the government could have credibly said that the witness could have been located in two more weeks, when a month's search had been unavailing, the representation that it had exercised due diligence lacked force. On the record, we think that the court was entitled to infer that the government would be unable to present the missing witness at any scheduled date in the near future. With no realistic prospect of proceeding to trial on

any date, we cannot say that the district court was obliged to continue the case and set it down for trial on another date prior to the expiration of the 180 day period.[4]

■ As the denial of the continuance was within the district court's discretion, the dismissal of the indictment, presumably without prejudice, was not improper under Rule 48(b).[5] We have often noted that the power of the district court to dismiss under Rule 48(b) for "unnecessary delay in bringing a defendant to trial" is not limited to those situations in which the Sixth Amendment right to a speedy trial has been violated. *United States v. De Leo,* 422 F.2d 487, 495 (1st Cir. 1970); *United States v. Cartano,* 420 F.2d 362, 363 (1st Cir. 1970). The government claims that there has been no unnecessary delay in this case, at least not of the magnitude normally associated with the Rule 48(b) dismissals. We agree that the language of the Rule, authorizing dismissals for "unnecessary delay" does not expressly cover the situation in this case where the delay was as much prospective as retrospective. But the policy of Rule 48(b) is not necessarily as limited as the language suggests.[6] The Advisory Committee note explains that "[t]his rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Committee Note to Rule 48(b) in 8A J. Moore, Federal Practice ¶ 48.01[2] at 48–2. As the case had

---

4. Under 18 U.S.C. § 3161(h)(1)(A) & (B), a period of delay resulting from the absence of an essential witness who cannot be located by due diligence is excluded from the time limits otherwise imposed by § 3161. In resisting a motion to dismiss for violation of the time limits under § 3162, however, the prosecution has the burden of going forward with the evidence that a missing essential witness could not be produced despite due diligence. 18 U.S.C. § 3162(a)(2). As stated in the text, the government's actions in the present case are susceptible of the inference that it did not proceed with due diligence.

5. Perhaps a better procedure would have been to ask the U. S. Attorney whether he wished to move for dismissal pursuant to Rule 48(a). If the government did not move for dismissal, the case could have been called for trial, and upon failure of proof, the defendants would have been entitled to an acquittal on the merits.

6. In 1970, the Advisory Committee on Criminal Rules of the Judicial Conference of the United States proposed an amendment to Rule 48(b) which would have recognized "a power in the court to dismiss a prosecution when to do so '[would] serve the ends of justice and the effective administration of the court's business.'" 48 F.R.D. 547, 640 (1970). This proposal was not submitted to Congress nor enacted in the subsequent Federal Rules of Criminal Procedure Amendments Act of 1975, P.L. 94–64, 89 Stat. 370. While the rule would have specifically authorized the action taken in this case, it would have also authorized the courts to dismiss criminal cases for a broad range of policy reasons. Therefore, the proposed amendment's failure to gain approval does not negate the district court's authority to dismiss this case, under the circumstances related above, for want of prosecution under existing Rule 48(b).

been called for trial, a continuance denied, and the government had professed its unreadiness to proceed to trial, we conclude that there was a sufficient showing of want of prosecution to support a dismissal under Rule 48(b).[7]

Moreover, we are satisfied that strong policy reasons support the decision to dismiss here. Dismissal of an indictment is strong medicine, even where reindictment is possible. But we have indicated rather stringent limits to judicial discretion in countenancing delay. *United States v. Fay,* 505 F.2d 1037 (1st Cir. 1974). While there are also limits on a district court's discretion to dismiss indictments because of delay in prosecution, we would not wish to see district judges squeezed by strict speedy trial deadlines without considerable discretion to keep their dockets moving within the prescribed periods. In this case, by reason of the history of the case, the clear understanding of a final continuance to September 9, and the reasonableness of that understanding, we find no abuse of discretion.

*Affirmed.*

---

**7.** In light of our construction on Rule 48(b), we do not decide whether the action of the district court could have been upheld under its general residual power to "proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Fed.R.Crim.P. 57(b).