UNITED STATES of America, Plaintiff,

v.

James Edward JUDGE, Defendant.

Crim. A. No. 70–294–J.

United States District Court,
D. Massachusetts.

Dec. 3, 1976.

for failure to grant him a speedy trial in accordance with the guarantees of the Sixth Amendment, the Fifth Amendment, and the Fourteenth Amendment, and for "unnecessary delay in bringing (him) to trial" as required by Rule 48(b) of the Federal Rules of Criminal Procedure. After the filing of several memoranda, the holding of five hearings, and the issuance of four orders to the Government in regard to this motion, the time has now come when final disposition of the motion should be deferred no longer. On the basis of all the evidence presently before it, the Court concludes that the defendant's motion must be granted for the reasons hereinafter stated.

Because the issue here is one of speedy trial, the chronology of important events will be given in detail. In August 1968, Walter Zygmunt, a Postal Inspector assigned to investigate Apex Acceptance Co., visited that company's place of business in order to interview the managers—Pat Elliott, now known as James E. Judge, and Paul Ryan, now known as Patrick A. Schwick. To avoid confusion, they will hereafter be referred to by their presently known names. Mr. Zygmunt was informed by a secretary that Judge was away on vacation. Judge never returned to Apex Acceptance Co.

On September 10, 1970, an indictment containing 41 counts was returned by a Federal grand jury in Boston, Massachusetts, charging the defendant Judge and his co-defendant, Schwick, with mail fraud violations alleged to have occurred from on or about April 1, 1968 through on or about December 31, 1968. On September 22, 1970, the first warrant for Judge's arrest was issued. Because he could not be readily located, the Passport Department and the International Criminal Police Organization (INTERPOL) joined in the effort to find and apprehend James E. Judge. As a result of their effective investigative work, it became known [1] to the United States Attorney's Office by April 19, 1971, that the

Charles E. Chase, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Robert Snider, Snider, Crowe & Sbrogna, Boston, Mass., for defendant.

### COURT'S RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

JULIAN, Senior District Judge.

This case is before the Court on the defendant's motion to dismiss the indictment

---

**1.** The Court of Appeals for the First Circuit, in an unpublished Memorandum and Judgment, *United States v. Schwick,* Docket No. 72–1395 (June 26, 1973), which upheld Schwick's conviction, stated that ". . . at no time did the government, . . . have knowledge of the

defendant was residing in Quito, Ecuador, had married an Ecuadorian citizen, was in the process of naturalization in that country, and had established an art gallery there. Furthermore, the prosecutor was supplied with the defendant's passport number, his place of business, and his home address and telephone number. The Government, with minimal effort, could have mailed a copy of the indictment to the defendant, or otherwise notified him of the pendency of the indictment, and requested his voluntary return to the United States, or instituted extradition proceedings against him pursuant to 18 Stat. 199, 55 Stat. 1196. Moreover, the Government at all times knew the address of the defendant's mother, who was residing in New York; it could have simply mailed a copy of the indictment or other notification of the pendency of the indictment to the defendant in care of his parents soon after it was returned.

Instead, the prosecution did nothing with respect to this defendant for two years, during which time Patrick A. Schwick, Judge's co-defendant, was tried and convicted on 16 counts of mail fraud and sentenced to five years in prison. In 1973, the Government once again requested from INTERPOL Quito an update on Judge's whereabouts, and it was confirmed that he was still living in Quito, Ecuador, with his wife and their two children. Once again, the Government did nothing.

On December 18, 1974, the defendant arrived at JFK Airport in New York on his way to visit his parents. He was arrested at the airport on the basis of the 1970 warrant, retained counsel, was arraigned in Brooklyn, New York, and was released on bail. The defendant returned to his home in Ecuador, but has remained in continuous communication with his attorney and did appear at the one court hearing where his presence was requested.

■ On February 7, 1975, the defendant filed his first motion to dismiss for denial of his right to a speedy trial. Reso-

lution of this motion turns on a factual determination of when the defendant first learned that an indictment had been returned against him in the United States. It is well established that where the defendant's unlawful flight or hiding out is the reason for the delay in his trial, he is held to have waived his right to a speedy trial. See *United States v. Cartano,* 420 F.2d 362, 364 (1 Cir. 1970); *Dickey v. Florida,* 398 U.S. 30, 48, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); 57 A.L.R.2d 318; Speedy Trial Act, 18 U.S.C. § 3161(h)(3) (1975); but see *United States v. Salzmann,* 548 F.2d 395 (2 Cir. 1976), (Feinberg, J., concurring). The mere fact that a defendant is out of the jurisdiction, without more, however, does not preclude him from asserting his right to a speedy trial. · *United States v. McConahy,* 505 F.2d 770, 773 (7 Cir. 1974); *United States v. Salzmann, supra.*

In light of this law, the Court, on May 7, 1975, after a preliminary hearing on defendant's motion, ordered the Government to

> "file on or before Tuesday, May 27, 1975, an affidavit (or affidavits) which specifies: . . . (5) what information was given to the defendant by Interpol or the government concerning his indictment, and when the information was given to him; and (6) the reasons for any delay in informing the defendant of his indictment and in bringing him to trial."

On June 17, 1975, because the requested information had not been received, the Court issued a second order requiring the Government to comply with its previous order on or before June 30, 1975. On June 27, 1975, the Government filed an affidavit of Walter Zygmunt, the investigating Postal Inspector, stating that he did not know whether INTERPOL agents had informed Judge of the indictment and, if they had so informed him, when this information had been conveyed to Judge. On July 22, 1975, this Court entered its third order requiring the Government to make appropriate in-

---

co-defendant's whereabouts." There is nothing to indicate that the evidence before this Court

was ever brought to the attention of the Court of Appeals.

quiries of INTERPOL Quito for the requested information. On August 12, 1975, the Government filed an affidavit of Charles E. Chase, Esq., the Assistant United States Attorney handling the case, which described the inquiries made by the Government of INTERPOL, Quito, but which failed to state what information was given by INTERPOL agents to the defendant. The Government was given until October 3, 1975, to ascertain and to provide the Court with the information previously requested but still not supplied. Once again, the Government failed to comply and the Court, on October 29, 1975, issued its fourth order requiring the Government to show cause why letters rogatory should not be issued to depose the appropriate INTERPOL officials.

On February 3, 1976, an evidentiary hearing was held on the defendant's motion to dismiss. At his own expense, the defendant traveled from Quito, Ecuador, to the Courthouse in Boston, Massachusetts, and there testified that he had been contacted on three separate occasions by INTERPOL agents in 1971, in 1973, and in 1975. He stated that the agents in 1971 and 1973 did not inform him that he was under indictment or that a warrant had been issued for his arrest.[2] He claimed that he first learned of "his troubles with the law" in December 1974 upon his arrest at JFK Airport.

At the hearing on February 3, 1976, the Court was informed that the Government had neglected to send the letters rogatory. Because this Court desired to give the Government every opportunity to depose the INTERPOL agents, it did not rule on the defendant's motion at that time. Letters rogatory were sent on May 27, 1976. To date, despite the passage of three more court-imposed deadlines, the Government has been unable to secure a response to its letters rogatory. Meanwhile, on May 26, 1976, the defendant filed his second motion to dismiss.

On October 27, 1976, the case was called for assignment of a trial date. The Court set November 10, 1976, as the final date for the Government to submit any further evidence in regard to the defendant's motion to dismiss, at which time the Court would decide the motion based on the evidence before it. If the motion were denied, the trial would be held on November 29, 1976. By letter filed November 10, 1976, the Government informed the Court that it had no further evidence to submit in opposition to the defendant's motion.

■■■ This Court's power to dismiss under Rule 48(b) of the Federal Rules of Criminal Procedure for "unnecessary delay in bringing a defendant to trial" is not limited to those situations in which the Sixth Amendment right to a speedy trial has been violated. See *United States v. Correia*, 531 F.2d 1095, 1099 (1 Cir. 1976). The rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution. See Committee Note to Rule 48(b) in 8A J. Moore, Federal Practice § 48.01(2), at 48.2. In determining whether to exercise its discretionary power to dismiss pursuant to Rule 48(b), Fed.R. Crim.P., the Court may take into account the same factors as those considered by the courts in cases involving constitutional issues of denial of a speedy trial. *United States v. Dowl*, 394 F.Supp. 1250 (D.C.Minn. 1975). The Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), identified the following four salient factors in determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.*, at 530, 92 S.Ct. 2182. These same factors may be appropriately considered by this Court in a Rule 48(b) determination.

■■■ *Length of Delay.* The Sixth Amendment speedy trial provision does not

---

**2.** The defendant did state that one agent had mentioned the term "bench warrant." The warrant, however, was not shown to him. The

defendant claimed that he understood the term "bench warrant" to refer to a requirement that he testify as a witness in somebody else's trial.

apply until the defendant in some way becomes an "accused," *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), an event that occurred in this case when the defendant was indicted on September 10, 1970. The long (four years and three months) delay between the return of the indictment and notice to the defendant necessitates an inquiry into the reasons for the delay.[3] Compare, for example, *United States v. Fay,* 505 F.2d 1037 (1 Cir. 1974), where a one-year and four-month delay between indictment and trial warranted an order dismissing the indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.

■ *Reasons for Delay.* This Court finds that the Government unnecessarily delayed bringing the defendant to trial. There are three relevant time periods in this case: (a) from the defendant's indictment in September 1970 until the Government discovered his whereabouts in April 1971; (b) from April 1971 until the defendant's arrest in December 1974; and (c) from the filing of the first motion to dismiss in February 1975 until the present. The Government's inaction during the first period, when it did not know where the defendant was located, is clearly excusable. *United States v. Cartano,* 420 F.2d 362, 364 (1 Cir. 1970).

■ During the second time period, from 1971 to 1974, however, the Government knew of defendant's whereabouts but made no effort to inform him that he was under indictment or to bring him to trial. The Court finds that the Government's failure to inform the defendant of the pendency of the indictment during the period from April 1971 to the time of his arrest in December 1974, was inexcusable. On the basis of defendant's uncontroverted testimony, the Court further finds that the defendant did not know until the date of his arrest that he had been under indictment. Thus the defendant was not a fugitive, and the Government cannot claim that by his absence from the country during that period he had waived his right to a speedy trial.

In the absence of a satisfactory explanation for the Government's failure to inform the defendant of the charges pending against him, this Court finds that such failure resulted from inexcusable governmental neglect. The ultimate responsibility for bringing a defendant to trial rests on the Government and not on the defendant. *United States v. Fay, supra,* at 1040; *Barker v. Wingo, supra,* 407 U.S. at 529, 92 S.Ct. 2182. Thus, while unintentional delay is "more neutral" than calculated delay in assessing Sixth Amendment claims (*United States v. Massaro,* 544 F.2d 547 (1 Cir. 1976)), the defendant's rights must not be prejudiced by reason of such inaction.

During the third time period, the delay in ruling on the defendant's motion to dismiss was occasioned by the Court's efforts to afford the Government every opportunity to obtain and present evidence relevant to the issue of delay and the Government's persistent noncompliance with the Court's orders. The defendant has in no way contributed to this delay.

*Assertion of Right.* This Court finds that the defendant has promptly and vigorously asserted his right to a speedy trial, as evidenced by his two motions to dismiss and his presence, at considerable expense to himself, at the February 3 hearing on the first motion.

■ *Prejudice.* The Court further finds that the inordinate delay in bringing the defendant to trial was prejudicial to his rights. The records of Apex Acceptance Co. and the checks from its banks' accounts cannot now be located by the defendant, except for a limited number which are in the custody of the United States Attorney's Office. The missing records and checks may well have an important bearing on defendant's guilt or innocence of the charges against him.

■ Moreover, the Supreme Court in *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), made explicitly clear

---

**3.** It is the rule in this Circuit that prejudice may not be presumed from the mere passage of time. *United States v. DeLeo,* 422 F.2d 487, 494 (1 ·Cir. 1970).

that the prejudice to a defendant caused by a denial of his speedy trial right is not confined to possible impairment of his defense. The speedy trial right protects a defendant's interest in carrying out his activities free from public scorn, free from the fear of potential disruption of employment, and free from the anxiety which is a concomitant part of being a defendant in a criminal proceeding. In this case, during the period of the Government's inaction in bringing him to trial, the defendant established a home, a family and a business in Quito, Ecuador. All this would be jeopardized by subjecting him to continued prosecution at this late date.

The Court concludes that a refusal to exercise its discretion in favor of dismissal under Rule 48(b) would be unjustified. See *United States v. Correia,* 531 F.2d 1095 (1 Cir. 1976).

Although the remedy of dismissal is a severe consequence, the Supreme Court in *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), a case involving only a ten-month delay, unanimously concluded that dismissal was the exclusive remedy available to a denial of a defendant's speedy trial right. A dismissal pursuant to Rule 48(b), Fed.R.Crim.P., for "unnecessary delay in bringing a defendant to trial" is governed by similar considerations.

Accordingly, the defendant's motion to dismiss pursuant to Rule 48(b) is granted, and it is ordered that the indictment be dismissed.