UNITED STATES of America, Plaintiff,

v.

LITTON SYSTEMS, INC. d/b/a Ingalls Nuclear Shipbuilding Division, Defendants.

Crim. No. S78–0031(R).

United States District Court, S.D. Mississippi, S.D.

March 1, 1983.

Jerry Davis, Asst. U.S. Atty., Biloxi, Miss., Elsie L. Munsell, U.S. Atty., E.D. Va., Joseph A. Fisher, III, and James A. Metcalf, Asst. U.S. Attys., E.D. Va., Frank W. Dunham, Jr., Sp. U.S. Atty., E.D. Va., Alexandria, Va., for plaintiff.

Bruce W. Kauffman, Stephen J. Mathes, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., Edmund L. Brunini, George P. Hewes, III, Charles P. Adams, Jr., Brunini, Grantham, Grower & Hewes, Jackson, Miss., for defendants.

REASONS FOR JUDGMENT

DUPLANTIER, District Judge.

Litton Systems, Inc. (Litton), indicted in April of 1977 for allegedly making a false claim against the United States govern-

ment (18 U.S.C. § 287) [1], has filed a motion to dismiss the indictment because of "inexcusable and prejudicial prosecutorial delay" and the "loss and destruction of exculpatory evidence." Litton contends that, considering the delay and resulting prejudice, further prosecution would violate its Sixth Amendment right to a speedy trial. Litton also urges dismissal on the basis of Rule 48(b) of the Federal Rules of Criminal Procedure. [2] For the following reasons, the motion to dismiss the indictment was granted.

In 1968, the Ingalls Nuclear Shipbuilding Division of Litton entered into a contract with the United States Navy for the construction of three nuclear submarines. Prior to the awarding of the contract to defendant, the Navy conducted an investigation to determine the manpower and facilities capability of the Ingalls Shipyard; the documents accumulated in this investigation are referred to as "source selection documents."

Over two years after the contract date, Litton filed a claim with the Navy, seeking compensation for increased contract costs which Litton asserted were made necessary by actions of the government. After this claim was made by Litton, the Navy conducted another investigation, this time gathering "production audit documents" which defendant had relied on in making its request for increased compensation. The claim was brought before the Armed Services Board of Contract Appeals (ASBCA), and in early 1976, after hearing sixty-nine days of testimony, the board awarded Litton over sixteen million dollars.

Before the ASBCA ruling was handed down, the government began a criminal investigation into allegations of fraud relating to the claim made by Litton. Evidence was presented to three grand juries, one of which expired after 18 months of investigating only Ingalls Shipyard without returning an indictment. For six days in April of 1977, a fourth grand jury heard a summary by two FBI agents of the evidence before the prior grand juries and returned a one-count indictment against the corporate defendant only. All of these grand juries were empanelled in the Eastern District of Virginia.

Shortly after the indictment was handed down, the United States District Court granted a motion to dismiss the indictment on the ground of prosecutorial misconduct during the grand jury proceedings. Early in 1978, the United States Court of Appeals for the Fourth Circuit reversed and remanded the case for trial. 573 F.2d 195. Later that year, the district judge granted a defense motion for change of venue and transferred the case to the Southern District of Mississippi, where the Ingalls Shipyard is located.

A status conference was held on January 25, 1979; the parties jointly agreed that the case need not be set for trial within the 60 day period [3] provided in the Speedy Trial Act (18 U.S.C. § 3161(c)(1) and (e)). An order issued after the conference allowed the parties forty days to file motions, and stated that if a party objected to a motion being heard, on the basis that the motion had already been decided by the district court in the Eastern District of Virginia, then a hearing was to be set on the "objection" prior to any substantive action on the motion itself. By March 19, 1979, Litton had filed several motions, and the government had filed objections, seeking the dismissal of all but one of the motions. A

---

**1.** 18 U.S.C. § 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**2.** Defendant does not suggest that the indictment should be dismissed on the basis of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* The sanction of dismissal is applicable only to indictments filed on or after July 1, 1980. 18 U.S.C. § 3163(c); *United States v. Horton,* 646 F.2d 181 (5th Cir.1981).

**3.** The Speedy Trial Act has since been amended so that the 60 day period referred to is now 70 days. 18 U.S.C. § 3161(c)(1) and (e).

hearing on the objections was never set by the government; in fact, the government did not take any further action toward prosecution for over three and one-half years, until September 22, 1982, when the government filed a motion to set a trial date.

During the intervening period, the only activity which could be construed as in furtherance of the prosecution was a meeting on December 17, 1979, provoked by defendant's attorney, to discuss possible settlement. The settlement negotiations were short-lived; on January 23, 1980, Litton's attorney wrote to the U.S. Attorney, confirming that negotiations were ended. The letter stated that "[i]t is understood that the parties' agreement not to take any further actions concerning the criminal case during the pendency of settlement negotiations is terminated."

## I. SPEEDY TRIAL UNDER THE SIXTH AMENDMENT

■ The starting point for any analysis of an alleged violation of the Sixth Amendment right to a speedy trial is the United States Supreme Court decision of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Barker* sets forth a four-part "balancing test" to be applied on an *ad hoc* basis whenever an issue concerning a breach of the speedy trial guarantee is raised. *Id.* at 530, 92 S.Ct. at 2191. The United States Court of Appeals for the Fifth Circuit recently discussed the *Barker* test and its factors as follows:

> *Barker v. Wingo* provides the tetrad standard against which we must measure the elusive speedy trial perquisite: (1) duration; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice caused by the delay. No one consideration is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial ... they are related factors and must be considered together with such other circumstances as may be relevant." 407 U.S. at 533, 92 S.Ct. at 2193.

*United States v. Greer,* 655 F.2d 51, 52 (5th Cir.1981). *See also Jamerson v. Estelle,* 666 F.2d 241 (5th Cir.1982); *United States v. Herman,* 576 F.2d 1139 (5th Cir.1978); *United States v. Edwards,* 577 F.2d 883 (5th Cir.1977), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *United States v. Avalos,* 541 F.2d 1100 (5th Cir.1976); *Arrant v. Wainwright,* 468 F.2d 677 (5th Cir. 1972).

■ Considering these four related factors together with the other circumstances relevant to this prosecution, we conclude that Litton's right to a speedy trial has been violated and that the indictment should be dismissed.

### (A) *Length of Delay*

■ The Sixth Amendment right to a speedy trial attaches at the date of arrest or, in this case, indictment, and runs until the commencement of trial. *United States v. Gonzalez,* 671 F.2d 441, 444 (11th Cir. 1982). Because the government could not proceed to trial until the case was transferred to Mississippi, we consider the delay period as commencing then rather than at indictment. The transfer to this district was in late 1978; the government first filed a motion to set a trial date on September 22, 1982, over three and one-half years later. The government argues, and correctly so, that the length of delay sufficient to warrant inquiry into the remaining *Barker* factors is related to the complexity of the case; however, forty-five months is an extraordinary delay by any standard. This conclusion is mandated by the Fifth Circuit's determination in *United States v. Avalos, supra,* that a 15 month delay in a complex conspiracy case "triggered" the *Barker* test. Moreover, the government had spent years prior to indictment compiling evidence against Litton; by the date of indictment it should have been prepared to proceed to trial promptly.

### (B) *Reasons for Delay*

We now consider the government's asserted justifications, or lack thereof, for the lengthy delay. Three general categories of

reasons for delay have been suggested by the Fifth Circuit, each assigned a different weight of culpability: deliberate delay, negligent delay and justified delay. *United States v. Avalos, supra; Turner v. Estelle,* 515 F.2d 853 (5th Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976).

We classify the period between indictment and March 19, 1979, as justified delay. It was during that interval that defendant's motion to dismiss the indictment for prosecutorial misconduct before the grand jury was granted by the district court, the district court's decision was reversed by the Court of Appeals, and the case was remanded to the district court in Virginia and then transferred to this district in Mississippi. The date March 19, 1979, is significant because it was at that point that all motions and objections thereto had been filed. It was then the government's obligation to take steps to bring the case to trial.[4] Although this period can be justified, the government, cognizant of the amount of time that already passed in this "justified period", should have moved all the more expeditiously thereafter. Both lengthy prior periods, the first between the alleged criminal activity and indictment, and the second between indictment and March 19, 1979, amplify the unreasonableness of any subsequent periods of unjustified delay.

From March 19, 1979, until 42 months later, September 22, 1982, when the motion to set a trial date was filed, the government took no action whatsoever. The court's other commitments would, of necessity, require several additional months of delay between the motion to set a trial date and the com-

mencement of trial, especially considering the anticipated length of trial.[5] Thus the period of prosecutive inaction is more appropriately estimated at four years. As noted earlier, the constitutional right to a speedy trial attaches at indictment and runs until *trial,* not merely until the date on which the government moves to set a trial date. *United States v. Gonzalez, supra.*

The government has offered various explanations for several segments of this four year period. It would serve no useful purpose to discuss all of these in detail, but some discussion is necessary to demonstrate that the government has merely explained, but not justified, the long delay.

The government's primary explanations for the delay relate to internal problems within the Department of Justice. In particular, an attorney whom the government considered to be an essential part of its trial team had gone into private practice in 1978 and had difficulty in arranging his schedule to take part in the Litton litigation. A related "problem" was that serious discussions were being carried on within the Department of Justice as to whether or not the prosecution of Litton should be pursued. Such explanations of course do not justify the deprivation of the right to speedy trial, especially since Litton was unaware of the government's "problems." As far as Litton knew, or any other reasonable defendant would have believed, the case had been abandoned by the United States. Certainly the record supports the conclusion that the government had abandoned the prosecution and decided to resurrect it shortly before the motion to set a trial date.[6]

---

**4.** On March 29, 1979, the government sent a letter to the trial judge stating that it had filed its objections to Litton's motions, and it "look[ed] forward to receiving further directions from the court as to a hearing date." It is well recognized that the primary responsibility for moving a criminal case to trial lies with the prosecution. *Barker v. Wingo, supra,* 407 U.S. at 527, 92 S.Ct. at 2190. Even in those cases in which delay is related to actions taken by the court, and this is *not* such a case, the government still has a responsibility to minimize the delay. *United States v. Vispi,* 545 F.2d 328 (2d Cir.1976); *United States v. New*

*Buffalo Amusement Corp.,* 600 F.2d 368 (2d Cir.1979); *United States v. Jones,* 524 F.2d 834 (D.C.Cir.1975). All that the government needed to do in this case was to file a motion to set a hearing. Instead, the government took no action for well over three years.

**5.** Counsel estimated that the duration of trial would be between three and six months.

**6.** The government's decision to reassemble its trial team was not made until May 24, 1982, and not announced until September 22, 1982, when the motion to set for trial was filed.

The court's impression that the government's explanations were not excuses nor "justified reasons for delay" was confirmed at oral argument by the government's admission that in fact no action was taken because the prosecution was satisfied with the status quo and with not proceeding to trial.[7]

Additionally, while under certain circumstances complexity may justify a longer than normal delay, the government nowhere suggests that the reason for the delay is the complexity of this case. Admittedly, the government's desire to have a former government attorney return from private practice to try the case is related to its complexity. However, the Justice Department never requested that attorney to rearrange his commitments in private practice to accommodate to a speedy trial of Litton. At any rate, as already noted, the government admitted that the true reason for the delay was that it was "perfectly satisfied with the fact that nothing was moving forward." That the long delay was deliberate can be determined entirely from the following colloquy during oral argument, between the government's special prosecutor and the court:

THE COURT: Well, you just got finished telling me . . . that all the Government had to do was ask you and you would have been "Johnny on the spot".

MR. DUNHAM: I said that I would have attempted—I just told you, Your Honor, I said I would have attempted to organize my schedule in such a way that I could have accommodated them.

THE COURT: I understand that.

MR. DUNHAM: And I believe I made myself clear, Your Honor, that it is not something that I had complete control over. I had Judges in the District of Columbia and Eastern District of Virginia to deal with—

THE COURT: Nobody suggested that you had that. What I'm saying is that no attempt ever was made to mesh those schedules, and you have told me that, and I understand that. The Government never asked you to accommodate to an earlier trial date in this matter.

MR. DUNHAM: That's true Your Honor.

THE COURT: It sat still and said we're satisfied the way things are going.

MR. DUNHAM: That's exactly—Now that's—

THE COURT: That's it.

MR. DUNHAM: I don't quibble with that at all, Your Honor. That's correct.

THE COURT: Now the problem is, you know, how does that implicate the Defendant's rights under the constitution.

A final justification offered by the government for the four year delay is that during that period the government and Litton entered into settlement negotiations, and apparently struck an understanding that the criminal prosecution would not move forward during the ongoing discussions. Review of the record shows that the government is correct, that discussions did occur at the request of the defendant for

---

There is strong evidence that the May 24th decision was made only after pressure upon the Justice Department from prominent political figures. A letter dated January 13, 1982, was sent to Attorney General William French Smith by Admiral Hyman Rickover, complaining that the prosecution of Litton had "lain dormant" and that "the Justice Department is systematically closing down these investigations." Admiral Rickover notes the obvious: "[w]ith the passage of time, the likelihood of prosecution becomes more remote . . ." Another letter, this one by Senator William Proxmire dated February 24, 1982, requests that Attorney General Smith provide [Proxmire] with a status report of [the Litton case] and together with an explanation of why [it has] dragged on for so

long and why [it is] being dropped." The fact that it appeared to Senator Proxmire and Admiral Rickover that the Litton prosecution was quite likely abandoned demonstrates that Litton's similar belief was justified.

7. Frank W. Dunham, Jr., Special United States Attorney, Eastern District of Virginia, in responding to a suggestion by the court, stated:

MR. DUNHAM: Your Honor, that impression that you just stated . . . , I believe more succinctly states the proposition than I could put it. Both sides were perfectly satisfied with the fact that nothing was moving forward.

exactly five weeks[8] of the four year period. The parties met on December 17, 1979, agreeing that prosecution would be stayed during negotiations; the talks broke off on January 23, 1980. On that date a Litton attorney notified the government by letter that their understanding concerning a stay of the criminal prosecution was terminated. Because the settlement negotiations involve only an insignificant part of a substantial period of delay, the unjustified nature of the total delay is unaffected. Even if the negotiations had occurred over a longer period, the time spent in settlement discussions should weigh against the government. Settlement negotiations can be analogized to the process of plea bargaining, the period for which has been held to weigh against the government. "[I]f the government wishes to bargain . . . , it may but it should do so mindful of the risks which it thereby assumes of dismissed indictments for unconstitutional delay." *United States v. Carini,* 562 F.2d 144, 149 (2d Cir.1977). *See also United States v. Roberts,* 515 F.2d 642 (2d Cir.1975).

Clearly, the reasons for the delay are not "justified"; indeed, we categorize the delay as "deliberate", not merely "negligent." *Turner v. Estelle, supra; United States v. Avalos, supra.* Neat categorizations of previous decisions do not apply to the present extraordinary situation in which the government admits that an excessive period of inaction was the result of governmental complacency. Surely such a conscious, intentional decision not to proceed presents more than a negligent or neutral reason for delay. The decision not to seek a trial date for nearly four years was deliberate[9], and,

thus, weighs very heavily against the government.

(C) *Assertion of the Speedy Trial Right*

Not surprisingly, the Supreme Court in *Barker v. Wingo, supra,* 407 U.S. at 527, 92 S.Ct. at 2190, placed the responsibility for bringing a criminal prosecution to trial squarely upon the shoulders of the prosecution:

> A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

Although rarely will a defendant be anxious to have himself brought to trial, the Court nevertheless concluded that a consideration to be weighed along with the other factors was whether defendant had asserted the speedy trial right.

Under the unusual circumstances of this case, Litton's conduct was sufficient to constitute its assertion of its Sixth Amendment speedy trial right. If nothing else, the letter to the prosecutor dated January 23, 1980, in which the defendant's counsel stated clearly that the agreement by which the government would not pursue the criminal prosecution during the pendency of settlement negotiations was terminated, put the government on notice that thereafter defendant intended to assert whatever right it had *quo ad* prosecutive delays. There is no other reason for the statement in the letter. It is significant that this letter was sent

---

**8.** During this period of negotiations, defendant's attorney sent a lengthy letter to a government attorney concerning specifics of settlement possibilities. The letter includes a comment that "[s]taleness is to Litton's benefit." If by referring to this letter, the government implies that its delay was justified, because it appeared that Litton was in no hurry to complete the litigation, the argument is rejected. Taken in the context of the entire letter, Litton was simply trying to persuade the government that settlement would be to the government's advantage. In any event, the letter sent by

Litton's attorney less than three weeks later terminating any understanding that the parties would take no further action certainly sufficed to reinstate, if necessary, Litton's speedy trial rights.

**9.** Although the government's delay was not deliberate in the sense that it was motivated by a desire to hamper Litton's defense, delaying the decision to revive the prosecution until May of 1982, and failing to advise Litton for an additional four months thereafter, had the same effect.

early in the four year period of unexcused government inaction. We conclude that defendant's speedy trial right was timely urged. *See generally United States v. Greer, supra; United States v. Herman, supra.*

Once settlement negotiations between the government and Litton ceased in January of 1980, there was no further contact between the parties until 32 months later, when the government filed a motion to set a trial date. The government conceded in its memorandum that during a lengthy period it seriously considered abandoning the prosecution.

Certainly, it was reasonable for Litton to have concluded that the indictment was not being pursued. Under the circumstances, Litton should not be charged with the responsibility of taking any further action to bring the criminal charge against it to trial.

The government argues that Litton's agreement on January 25, 1979, that the case need not be set for trial within the Speedy Trial Act 60-day period, somehow waived Litton's right to assert a Sixth Amendment violation. Assuming that this agreement did in fact act as a continuing waiver of the defendant's Speedy Trial Act rights, which is very doubtful [10], it certainly did not affect Litton's constitutional interests. *See* 18 U.S.C. § 3173.[11] As the Supreme Court has often stated, the waiver of a constitutional right is not to be inferred:

> The Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Courts should "indulge every reasonable presumption against waiver," *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937), and they should "not presume acquiescence in the loss of fundamental rights," *Ohio Bell*

*Tel. Co. v. Public Utilities Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1937).

*Barker v. Wingo, supra,* 407 U.S. at 525–6, 92 S.Ct. at 2189–2190.

Litton did not waive the protection of the Sixth Amendment, but instead asserted its right to a speedy trial, at least as of January, 1980.

### (D) *Prejudice Caused By The Delay*

In *United States v. Avalos, supra,* at 1116, the Fifth Circuit enumerated three principles applicable to the speedy trial factor of "prejudice":

> First, a showing of actual prejudice to the conduct of the defense will weigh heavily against the government and may lead to dismissing the indictment even when the three remaining factors are not weighted heavily in favor of the accused. When a showing of actual prejudice is conjoined with a lengthy delay by the government that is unexplained or deliberate, then a defendant states a compelling case for denial of speedy trial. *See Arrant v. Wainwright, supra,* 468 F.2d at 683.

> Second, where the government's lengthy delay is unexcused or purposeful, in the sense of a deliberate delay to gain tactical advantage, the government's delay is prima facie prejudicial. The government will have the burden of demonstrating that the defendant has not been prejudiced by the delay. *See Murray v. Wainwright, supra,* 450 F.2d at 471.

> Third, when the three other elements of *Barker's* weighing and balancing test are heavily weighed in favor of the accused, the accused need demonstrate no prejudice at all. "Prejudice—either actual or presumed—becomes totally irrelevant." *Hoskins v. Wainwright, supra,*

---

**10.** *See United States v. DeLongchamps,* 679 F.2d 217 (11th Cir.1982), a recent case indulging every reasonable presumption against waiver of a Speedy Trial Act right, and holding that if a waiver is found, the extent of the waiver should be interpreted narrowly.

**11.** 18 U.S.C. § 3173 provides:
No provision of this chapter [18 U.S.C. §§ 3161 et seq.] shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution.

485 F.2d at 1192. *See Prince v. State of Alabama, supra,* 507 F.2d at 706–07.

There can be no doubt that the first two elements of *Barker*'s "weighing and balancing test", duration and reason for the delay, are very "heavily weighted" in favor of the accused. While there is no evidence that the delay was "purposeful, in the sense of a deliberate delay to gain tactical advantage" the delay was unexcused, and this suffices under *Avalos* to place upon the government the burden of "demonstrating the lack of prejudice to defendant." *Id.* The government has not met this burden.

Alternatively, we conclude that the third principle of *Avalos* is applicable and that therefore prejudice is "totally irrelevant." While the third *Barker v. Wingo* factor, "assertion of the right" is a closer call than the first two (duration and reason for delay), it also is "weighted" in favor of the accused. We hold that the total "weight" of the three factors is indeed sufficiently "heavy" in favor of the accused to make applicable the third principle of *Avalos* and render prejudice irrelevant.

Finally, for the sake of completeness, we hold that Litton has demonstrated "actual prejudice to the conduct of the defense." *Id.*

The three types of prejudice that a speedy trial seeks to prevent were outlined by the Supreme Court in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193:

> This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Only a corporate defendant is indicted; hence the first of these interests is not a concern here. The second, relating to "anxiety", is a consideration only in that several Litton personnel have been implicated through the government's answer to a request for a bill of particulars. Although the *Barker* test was not designed to protect non-defendants, the Court stressed in *Barker* that its list of four factors was not exclusive, and, therefore, the interests of collaterally implicated individuals in a speedy trial should not be totally overlooked.

Litton emphasizes prejudice on the basis of the "most serious" of the speedy trial interests of a defendant, impairment of its defense. In particular, Litton argues that several key witnesses have died during the unexcused delay, and documents vital to the defense have been lost by the government. Before examining these complaints, we note the seeming truism that the risk of prejudice is great in a complex case based on old facts. The government agrees that the present case involves an intricate set of circumstances based upon facts which occurred over fifteen years ago. Even if much of the delay in this case is viewed as justified, the fact that long periods of justified delay have occurred simply increases the possibility of serious prejudice arising during periods of unjustified delay.

The defendant makes a strong argument with regard to the importance of one of the deceased witnesses, David Adams, who died during the period of deliberate governmental delay, in May of 1980. The government alleges that certain manpower charts were submitted to support Litton's false claim. These charts were prepared by Mr. Adams. The government does not deny the importance of Mr. Adams, but asserts that he was a government witness and his testimony is preserved by grand jury transcripts. Not surprisingly, defendant is not comforted by that explanation. The fact that such testimony, elicited without cross-examination, without representation by counsel, and without regard for the rules of evidence, may be admitted at trial compounds the problem of potential prejudice. It is the defendant, not the government, which is prejudiced by the unavailability of the witness. Moreover, defendant stresses that the now deceased witness would have testified as to a number of matters favorable to defendant, not covered in his grand jury

testimony. An affidavit of one of the attorneys familiar with the situation provides specifics as to that exculpatory testimony.

Several boxes of exculpatory documents, of two different categories, have been lost while in the government's possession. The production audit documents lost were those materials accumulated by the Navy in 1970 when Litton filed its claim against the government. The missing source selection documents are the government's own documents which were the product of the Navy's 1968, pre-contract investigation of the Ingalls Shipyard's capabilities. The conclusion that compelling Litton to stand trial without these lost documents would be substantially prejudicial is not as clear as with respect to the deceased witness, Adams. However, considering all the circumstances, prejudice can reasonably be inferred.

While denying the existence of prejudice, the government argues that even if prejudice is apparent, the indictment should not be dismissed pre-trial, because the extent of the prejudice cannot be determined until the court has heard the complete factual development. Although in many cases it may be difficult to judge adequately the validity of a speedy trial complaint of prejudice prior to trial, "an accused who does successfully establish a speedy trial claim before trial will not be tried." *United States v. MacDonald,* 435 U.S. 850, 861 n. 8, 98 S.Ct. 1547, 1553 n. 8, 56 L.Ed.2d 18 (1978). *See also United States v. Roberts, supra; United States v. Salzmann,* 417 F.Supp. 1139 (E.D.N.Y.), *aff'd,* 548 F.2d 395 (2d Cir.1976). Even if pre-trial dismissal is unusual, it is particularly appropriate in this most unusual case. The expected length of this trial is three to six months. Proceeding with trial under the circumstances of this prosecution is impractical, considering the immense expense, both public and private, that trial would entail. Delaying a decision as to a speedy trial violation until after trial is also undesirable from the standpoint of judicial economy.

## II. SPEEDY TRIAL UNDER RULE 48(b) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The secondary ground for dismissal raised by defendant is based on Rule 48(b) of the Federal Rules of Criminal Procedure, which provides as follows:

If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

The extent of a district judge's discretion under this rule is unresolved in the Fifth Circuit, but there is no question that dismissal pursuant to Rule 48(b) is required in the event of a constitutional deprivation of the Sixth Amendment right to speedy trial. *United States v. Hill,* 622 F.2d 900 (5th Cir.1980); *United States v. Noll,* 600 F.2d 1123 (5th Cir.1979); *United States v. Gorthy,* 550 F.2d 1051 (5th Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Some circuits have interpreted Rule 48(b) as giving a district court the authority to dismiss in situations not involving a constitutional violation; the rule is a restatement of a court's inherent power to dismiss for want of prosecution. *See, e.g., United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976); *United States v. Correia,* 531 F.2d 1095 (1st Cir.1976); Notes of the Advisory Committee on Fed.R.Crim.P. 48(b). In deciding whether dismissal is justified under this rule, a court should consider the same factors relevant to a constitutional decision, as outlined in *Barker v. Wingo, supra,* but impose a stricter standard. 3A C. Wright, *Federal Practice and Procedure,* § 814 (1982). Dismissal may be with or without prejudice. *Id.*

The government disputes that dismissal would be proper here, arguing that the rule should be exercised only after the government has been forewarned of the sanction. The government argues that this view of the rule has been adopted in the Seventh and the Ninth Circuits: *United States v.*

*Clay,* 481 F.2d 133 (7th Cir.1973); and *United States v. Simmons,* 536 F.2d 827 (9th Cir.1976). In actuality, the *Clay* decision, relied on in *Simmons,* held that "[a]bsent such forewarning, or some other showing justifying an exercise of discretion ... it was error to dismiss the indictment simply because unnecessary delay of approximately eight months occurred ..." 481 F.2d at 138. *Clay* would not require forewarning here, because "there is some other showing justifying an exercise of discretion"—the excessive period of unjustifiable delay. In any event, even if *Clay,* involving an eight month delay, and *Simmons,* four months, did support the government's position, those cases would hardly be persuasive in this situation where the delay approaches four years.

Obviously, because this court has already found a constitutional deprivation of the speedy trial guarantee, a 48(b) dismissal is mandated. In the event the delay in the present case had been found to have been less than constitutional in dimension, this court would have exercised its discretion and granted Litton's motion with prejudice to the government. The length of delay and the reasons therefor are, at the least, intolerable, if not unconstitutional.

### III. CONCLUSION

We would ordinarily avoid the Sixth Amendment issue and base the decision only on the non-constitutional ground, Rule 48(b). However, because the considerations in applying either Rule 48(b) or the Sixth Amendment right to speedy trial are so similar, and because the parameters of the Rule are not clearly defined, we dismiss the indictment on both grounds.