UNITED STATES of America

v.

**Robert ZABADY and Ronald Barillo, Defendants.**

Crim. Nos. 82–00023–01, 82–00023–02.

United States District Court,
M. D. Pennsylvania.

June 15, 1982.

**36**

Albert R. Murray, Asst. U. S. Atty., Scranton, Pa., for Government.

Morey M. Myers, William W. Warren, Scranton, Pa., Ronald M. Bugaj, Richard B. Henry, Honesdale, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Following a lengthy investigation by the United States Government which began in 1979, the Defendants, Robert Zabady and Ronald Barillo, were indicted by a federal grand jury on February 12, 1982. The fifty-four (54) count indictment charges the Defendants with various violations of 18 U.S.C. § 371 (1 count), 18 U.S.C. § 2312 (18 counts), 18 U.S.C. § 2313 (17 counts), and 18 U.S.C. § 1341 (18 counts). Essentially, the

Defendants are accused of having knowingly transported from Europe and sold in the United States stolen automobiles. The Defendants were arraigned before this Court on February 26, 1982, at which time a March 19, 1982 deadline for the filing of all pretrial motions was set and trial of this matter was scheduled for April 19, 1982. On March 19, 1982 the Defendants filed numerous pretrial motions.[1] By notice dated April 6, 1982, the Court advised the parties that a pretrial conference and discussion of the motions would be held April 14, 1982. On the eve of this conference, the Government filed a motion for an extension of time in which to file a response to the Defendants' pretrial motions, and a motion for exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*

At the April 14 pretrial conference, defense counsel first learned of the Government's intention to seek a six-month extension of time under the Speedy Trial Act. No representation had been made by the Government prior to April 13th that the prosecution would not be ready to proceed with its case on the scheduled April 19 trial date. As a result of this new information, defense counsel orally indicated to the Court that they desired to file an additional motion to dismiss the indictment on the basis of the Government's unlawful delay in bringing the Defendants to trial.[2] The Court then directed the Government to address this motion for dismissal, as well as its own motion for exclusion of time under the Speedy Trial Act, in a brief to be filed by April 23, 1982. The defense was given until April 30, 1982 to file a responsive brief. The Court also ordered the disposition of all other pretrial motions to be held in abeyance pending the resolution of these latest motions. On May 20, 1982, a hearing was held on the two motions and, in accordance with the Court's order of that date, a sup-

---

1. These included motions to inspect grand jury transcripts and minutes, to quash letters rogatory, to strike surplusage from the indictment, for a bill of particulars, for production of documents and other materials, and to dismiss the indictment. In addition to these, Defendant Barillo filed motions to suppress certain evidence and for severance of his trial. Briefs in support of the pretrial motions were filed by Defendant Zabady on March 29, 1982 and by Defendant Barillo on April 6, 1982.

2. A formal written motion was filed by Defendant Zabady on April 20, 1982 and by Defendant Barillo on April 30, 1982.

plemental memorandum of law has been filed by each party.

As a basis for dismissal of the instant indictment, Defendants invoke the "speedy trial" guarantees of the Sixth Amendment, the Speedy Trial Act, and, particularly, Rule 48(b) of the Federal Rules of Criminal Procedure. While the standards that a court must utilize in appraising the efficacy of a motion to dismiss under each of these provisions may vary, nevertheless, it is apparent that the chief societal and personal interests to be protected by the three are similar. In *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), the Supreme Court identified these interests:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

See also *Barker v. Wingo,* 407 U.S. 514, 532–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972); *Dickey v. Florida,* 398 U.S. 30, 41–42, 90 S.Ct. 1564, 1570–71, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring). Similarly, the Court recently noted in *United States v. McDonald,* —— U.S. ——, ——, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982), that the "speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released

on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." Thus, conceptually the three speedy trial safeguards, *i.e.,* the Sixth Amendment, the Speedy Trial Act, and Fed.R.Crim.P. 48(b), are interrelated in that their principal purpose is to mandate prosecutorial adherence to the age-old maxim that "justice delayed is justice denied." [3] In essence, they are "intended to spare an accused those penalties and disabilities—incompatible with the presumption of innocence—that may spring from delay in the criminal process", *Dickey v. Florida, supra,* 398 U.S. at 41, 90 S.Ct. at 1570 (Brennan, J., concurring), and to impose upon the Government an affirmative obligation to "move with the dispatch that is appropriate to assure ... [a defendant] an early and proper disposition of the charges against him." *United States v. Marion, supra,* 404 U.S. at 313, 92 S.Ct. at 459. It is with these basic tenets in mind that we now turn to consider the Defendants' motion to dismiss for unlawful delay, cognizant that a proper resolution of this issue "requires particularized attention to the specific facts of the case." *United States v. Mann,* 291 F.Supp. 268, 269 (S.D.N.Y.1968); see *Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957).

■ The primary ground raised by Defendants in their dismissal motion is Rule 48(b) of the Federal Rules of Criminal Procedure, which provides:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, *or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.* (emphasis added).

In addition to implementing or enforcing the Sixth Amendment guarantee of a speedy trial,[4] the rule serves a much broad-

---

**3.** For a concise discussion of the ancient origins of the speedy trial guarantee, see *Cobb v. Aytch,* 643 F.2d 946, 957–58, n. 6 (3d Cir. 1981).

**4.** See *Pollard v. United States, supra,* 352 U.S. at 361 n. 7, 77 S.Ct. at 486 n. 7; *United States v. Nance,* 666 F.2d 353, 360 (9th Cir. 1982); *United States v. Pilla,* 550 F.2d 1085, 1093 (8th Cir.), *cert. denied,* 432 U.S. 907, 97 S.Ct. 2954,

er function; it is a restatement of the court's inherent power to dismiss a case simply for want of prosecution. *United States v. Dreyer,* 533 F.2d 112, 113 n. 1 (3d Cir. 1976); *United States v. Correia,* 531 F.2d 1095, 1099 (1st Cir. 1976); *Mann v. United States,* 304 F.2d 394, 398 (D.C.Cir.), *cert. denied,* 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); Notes of Advisory Committee on Fed.R.Crim.P. 48(b); see generally 3 C. Wright, *Federal Practice and Procedure,* § 814 (1969). The scope of a federal court's discretionary authority under this provision was aptly delineated by the court in `United States v. Rowbotham,` 430 F.Supp. 1254, 1256–57 (D.Mass.1977):

> The court's power to dismiss under Rule 48(b) is not limited to those situations in which the defendant's sixth amendment right to a speedy trial has been violated. *United States v. Correia,* 531 F.2d 1095, 1099 (1st Cir. 1976); *United States v. DeLeo,* 422 F.2d 487, 495 (1st Cir. 1970), *cert. den.,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *United States v. Cartano,* 420 F.2d 362, 363 (1st Cir. 1970), *cert. den.,* 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970) . . . .[5]

> The rule imposes a stricter standard of tolerable delay than does the sixth amendment. *United States v. Cartano, supra.* Consequently, it may be proper for a court to exercise its discretion to dismiss an indictment under Rule 48(b) even though the unreasonable delay in prosecuting does not rise to a constitutional violation. 8B Moore's Federal Practice ¶ 48–03(1) at 48–17 (2d ed. 1976).[6]

> In determining whether to exercise its discretionary power to dismiss under Rule

48(b), the court may consider the same factors relevant to a constitutional decision regarding denial of a speedy trial. *United States v. Judge,* 425 F.Supp. 499 at 503 (D.Mass.1976); *United States v. Dowl,* 394 F.Supp. 1250 (D.Minn.1975).

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court established a balancing test to determine whether a defendant's speedy trial right has been violated. Specifically, the Court identified four factors that should be considered: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the Defendant. *Id.* at 530, 92 S.Ct. at 2192. None of the four factors, however, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. at 2193. See also *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973).

■ The first two *Barker* factors, the length and reason for the delay, are closely associated with each other in this case and will be discussed together. Presently, some four (4) months have passed since the date of Defendants' indictment. Of greater concern to the Court, however, is the amount of prospective delay which will be involved before the Government is prepared to proceed to trial in this matter. Consideration of prospective, as well as retrospective, delay is appropriate under Fed.R.Crim.P. 48(b). See *United States v. Correia, supra,* 531 F.2d at 1099; *United States v. Rowbotham, supra,* 430 F.Supp. at 1257.

53 L.Ed.2d 1080 (1977); *United States v. Rutkowski,* 337 F.Supp. 340, 341 (E.D. Pa. 1971).

5. Similarly, the court in *United States v. Villa,* 470 F.Supp. 315, 324 (N.D.N.Y. 1979), observed that "[b]eing an outgrowth of the Court's supervisory authority, this power [under Rule 48(b)] is independent of Sixth Amendment considerations. Its exercise has traditionally vested in the Court's discretion . . . ."

6. The Court of Appeals for the District of Columbia Circuit has also recognized this distinction. In *Mathies v. United States,* 374 F.2d 312, 314–15 (D.C. Cir. 1967), that Court said: "[Rule 48(b)] places a stricter requirement of speed on the prosecution, and permits dismissal of an indictment even though there has been no constitutional violation." See also *United States v. Mark II Electronics of Louisiana, Inc.,* 283 F.Supp. 280, 283–84 (E.D. La. 1968).

■ At the May 20th hearing, the Government's testimony[7] was limited to establishing that the instant case was a "unique" one, in that it involved a number of witnesses who reside in eight foreign countries.[8] It was explained that the Government was having considerable difficulty in gathering evidence, particularly sworn statements of key witnesses, because of the complicated letters rogatory process which must be utilized.[9] Consequently, the prosecution now seeks an extension of "six months or more" to complete pretrial discovery and prepare their case-in-chief. After a thorough review of the hearing testimony and of all the documents and briefs that are a part of the record in this case, it is abundantly clear to the Court that the Government will not conceivably be ready to bring these Defendants to trial on the charges alleged in the pending indictment for at least another year. Considering that the Defendants have been the target of an investigation for some time, we find that the Government's intention to now keep them under indictment and awaiting trial for such a long period of time is clearly unconscionable. In our view, such protracted post-indictment delay is patently inconsistent with society's "common interest that government prosecute, not persecute, those whom it accuses of crime." *Dickey v. Florida, supra,* 398 U.S. at 43, 90 S.Ct. at 1571 (Brennan, J., concurring). While the Court understands that the prosecution of a case of this nature necessarily requires more time for preparation, nevertheless, we simply cannot sanction an open-ended indictment process, whereby the Government would have essentially an unlimited time period, after an indictment is returned, to arrange its case. With the enormity of the resources of the United States Government, even the preparation of such a complex matter as this should move more expeditiously and orderly.[10] Indeed, no credible explanation has been offered by the Government as to why the indictment was sought and returned at the time it was when the evidence necessary for a conviction at trial was not reasonably ascertainable.

The third *Barker* factor, the defendant's assertion of his right, also weighs heavily in favor of the Defendants in this case. At the April 14, 1982 pretrial conference, the Defendants expressed their readiness to proceed on the scheduled April 19 trial date, and, upon learning of the prosecution's desire for an extension of time, promptly moved to dismiss the indictment on the basis of unlawful delay.

The final *Barker* factor to be considered is prejudice to the Defendants. Defendant Zabady presented two witnesses[11] on this issue at the May 20 hearing. Their testimony was limited to the effects that the attendant delay has had, or possibly may

---

7. Only one witness, Special Agent James Seidel, FBI, testified on behalf of the Government at the hearing.

8. The foreign countries involved are: Italy, Germany, Belgium, Sweden, Morocco, Austria, Spain and Switzerland.

9. "Letters rogatory are the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country; such request being made, and being usually granted, by reason of the comity existing between nations in ordinary peaceful times." 4 Moore's *Federal Practice,* ¶ 28.05 at 28–22 (2d ed. 1981), quoting *The Signe,* 37 F.Supp. 819, 820 (E.D. La. 1941). It was testified to that the Government has made these requests for judicial assistance to each of the eight foreign countries involved. The Government acknowledged, however, that as of this date only three countries have approved the letters rogatory and the present status of the other five is apparently unknown.

10. The proffered explanation that the officials of the Department of Justice in Washington, D.C., were too busy to assist in the preparation of the letters rogatory in this case and that other criminal trials took priority over the instant matter cannot outweigh the Defendants' right to a speedy trial.

11. The two witnesses were LeRoy Finlon, a business associate of Defendant Zabady, and Robert Hightower, a certified financial planner and licensed stock broker. Defendant Barillo presented no evidence on the issue of prejudice.

have, on the business endeavors of Defendant Zabady. No testimony was elicited regarding any deleterious consequences the delay has caused to the defense preparation in this case. However, since the bulk of the delay here is prospective in nature, the full extent of any prejudicial effects to the Defendants' case may not be readily ascertainable at this point in time. In any event, we note that the United States Supreme Court in *Moore v. Arizona, supra,* expressly recognized that "prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings." *Id.* at 26–27, 94 S.Ct. at 189–90.[12] As stated by our Court of Appeals in *United States v. Dreyer, supra,* the term "prejudice" encompasses "any threat to . . . 'an accused's significant stakes—psychological, physical and financial—in the prompt termination of a proceeding which may ultimately deprive him of life, liberty or property.'" *Id.* at 115, quoting *United States v. Roberts,* 515 F.2d 642, 645 (2d Cir. 1975). While the type of severe personal prejudice as was present in *Dreyer* is not apparent with the instant Defendants, it nonetheless inevitably exists to some extent in every case involving a prospective delay of such magnitude as here. See *Barker v. Wingo, supra,* 407 U.S. at 537, 92 S.Ct. at 2195 (White, J., concurring); *United States v. Judge, supra,* 425 F.Supp. at 505.

As previously stated, none of the four factors discussed above is "either a necessary or sufficient condition" to the finding of a speedy trial right violation; rather, it is the task of this Court to "engage in a difficult and sensitive balancing process" with respect to these factors. *Barker v. Wingo, supra,* 407 U.S. at 533, 92 S.Ct. at

2193. In striking this balance in the instant case, we find that the Government, having elected to go forward with an indictment against the Defendants at this time, has failed to discharge its obligation to make a "diligent, good-faith effort" to bring them to trial. See *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969); *United States v. Rowbotham, supra,* 430 F.Supp. at 1257. Although dismissal of an indictment, even where reindictment is possible, is a severe remedy, *United States v. Correia, supra,* 531 F.2d at 1100, the strong public policy interests underpinning the speedy trial guarantee enjoin this Court from countenancing such belated piecemeal trial preparation by the Government as is evident in this case. Accordingly, we will dismiss the indictment filed to Criminal Nos. 82–00023–01 and 82–00023–02 without prejudice pursuant to Federal Rule of Criminal Procedure 48(b).[13]

An appropriate Order will be entered.

---

**12.** In *Moore v. Arizona,* the Supreme Court also rejected the notion that an affirmative demonstration of prejudice was necessary to prove a speedy trial right violation. *Id.* at 26, 94 S.Ct. at 189. Similarly, within the context of Rule 48(b), one court has held that there is no need for a showing of prejudice to dismiss an indictment under this provision, *United States v. Navarre,* 310 F.Supp. 521, 522 (E.D. La. 1969); the Government itself has conceded as much. See Government's Supplemental

Memorandum of Law at 9 (Doc. # 40, filed May 26, 1982).

**13.** In view of our holding today, we need not address the Government's motion for an exclusion of time under the Speedy Trial Act. Further, our decision obviates any need for the Government to respond to or for this Court to rule upon the other pretrial motions filed by Defendants.