Bartle, J.
The defendant David T. Shulick has filed a motion to dismiss the indictment on the grounds that: (1) the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq., will be violated; (2) his right to a speedy trial under the Sixth Amendment to the Constitution has been infringed; and (3) unnecessary delay has occurred in contravention of Rule 48(b) of the Federal Rules of Criminal Procedure.
Shulick was indicted on October 11, 2016. He was charged with: one count of conspiracy with Chaka Fattah, Jr., charged elsewhere, to embezzle from a program receiving federal funds ( 18 U.S.C. § 371 ); one count of embezzlement from a program of the School District of Philadelphia receiving federal funds ( 18 U.S.C. § 666(a)(1)(A) ); four counts of wire fraud ( 18 U.S.C. § 1343 ); one count of bank fraud ( 18 U.S.C. § 1344 ); one count of making a false statement to a bank ( 18 U.S.C. § 1014 ); and three counts of filing false tax returns ( 26 U.S.C. § 7206(1) ). Shulick is a practicing lawyer. According to the indictment, the charges largely center on his activities as the shareholder and CEO of the Delaware Valley High School Management Corporation ("DVHS") and a related company, which contracted with the School District of Philadelphia, among other districts, to provide alternative education for high school students with discipline or attendance issues.
Shulick made his initial appearance on October 13, 2016 and was released on bail. Six days later on October 19, the court held a telephone conference with counsel and entered an order that same day designating the case as complex under 18 U.S.C. § 3161(h)(7)(B)(ii). A trial date was set for May 8, 2017 based on defense counsel's representation as to how long it would take her to prepare for trial. On March 6, 2017, the court extended the trial date to September 19, 2017 on the motion of defense counsel who needed more time to prepare due to the Government's continuing production of voluminous discovery.
In mid-July, 2017, defense counsel notified the court that the Government in the previous two months had produced an additional 133,000 documents in discovery and that she required still more time to be ready for trial. She also told the court she was having difficulty in obtaining documents from a third party, the School District of Philadelphia. As a result, on July 13, 2017, the court pushed back the trial date to October 2, 2017 with the acquiescence of defense counsel. The following day, the court barred the Government (but not the defendant) from introducing or using at trial any documents the Government had not produced by June 1, 2017.
On August 23, 2017, the Government requested a meeting with the court and defense counsel. The court scheduled it for the same day in Chambers. At the meeting, the Assistant United States Attorney ("AUSA") advised the court and defense counsel[1] that the Government had just realized that it had not produced a significant amount of discovery and that it would now promptly do so. This revelation precipitated *337 several motions on the part of the defendant. The next day, defense counsel filed a motion to compel discovery. The Government, as it promised, forwarded the extensive discovery. Based on the Government's prompt production and the lack of merit for production of the remaining requested discovery to which the Government objected, the court denied the defendant's motion to compel on September 28, 2017.
In the meantime, on September 27, 2017, defense counsel filed the pending motion to dismiss the indictment on the ground of undue delay as a result of what defense counsel characterizes as the Government's misconduct in withholding discovery long in its possession. The court adjourned the trial calendared to begin on October 2 and scheduled briefing as well as an October 17 hearing to permit the parties to present evidence relevant to the motion.
I
We first turn to defendant's argument that the indictment should be dismissed under the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq.
The Speedy Trial Act requires that the trial of a defendant commence within seventy days after the filing and making public of the indictment or his initial appearance, whichever occurs later. See 18 U.S.C. § 3161(c)(1). Certain periods of delay, however, are excluded from the computation of the seventy-day period. Section 3161(h)(1)(D) provides for the automatic exclusion of any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.]" Other events are excludable only if the court grants the continuance either on its own motion or on the motion of the defendant or the Government. If the court grants such a delay, it must make "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A). The Act lists a number of factors, among others, to consider in determining whether to grant a continuance. See § 3161(h)(7)(B). Since the Speedy Trial Act is designed not only to protect defendants but also to vindicate the public interest, defendants may not opt out of the confines of the Act. Bloate v. United States, 559 U.S. 196, 211, 130 S.Ct. 1345, 176 L.Ed.2d 54 (2010).
Six of the seventy days of the Speedy Trial Act elapsed between October 13, 2016, when the defendant made his initial appearance, and October 19, when the court entered its order deferring the trial until May 8, 2017 on the ground of the complexity of the action and the need for extra time for defense counsel to prepare for trial. On February 23, 2017, defense counsel filed a motion to continue the trial because she estimated there to be between 2,000,000 and 3,000,000 pages of discovery to review and because it was not possible for her to do so and to interview witnesses and consult with expert accountants during the period allotted. Defense counsel stated that she needed at a minimum an extension of between six and eight months. The subsequent orders continuing the trial to September 19, 2017 and then to October 2, 2017 were both based on the reasonable requests of defense counsel for more time to be ready for trial and the written findings of the court to this effect.[2] Thus as of *338 the filing of the defendant's motion to dismiss the indictment, no additional time beyond the six days had expired under the Speedy Trial Act.
As noted, the defendant filed the pending motion to dismiss on September 27, 2017. This motion automatically stopped the clock until the hearing on the motion concluded and the court promptly made its decision. See § 3161(h)(1)(D). A lengthy evidentiary hearing on the motion took place over five days: October 17, 18, 19, 20, and 26, 2017.
The defendant concedes that only six of the seventy days will have run up until his pending motion to dismiss is promptly decided. Since the court's ruling on the motion to dismiss is occurring today, the decision is prompt as it is being handed down within thirty days of October 26, the date the hearing ended. See § 3161(h)(1)(H) ; see also Henderson v. United States, 476 U.S. 321, 331, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). As of now, no additional days under the Speedy Trial Act have elapsed.
Defendant merely argues, predicated on speculation, that the seventy days under the Act will eventually expire if the motion to dismiss is denied because the case cannot be ready for trial within the Act's remaining sixty-four days. However, even if the trial cannot begin on that timetable, the court is able to exclude additional time on defendant's or the Government's motion or the court's own motion if the court makes appropriate findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." See §§ 3161(h)(7)(A), (B).
The defendant counters that the court cannot exclude any more time because of § 3161(h)(7)(C) which provides:
No continuance under subparagraph (A) of this paragraph shall be granted because of ... lack of diligent preparation ... on the part of the attorney for the Government.
Defendant asserts that the sluggish discovery production by the Government constitutes "lack of diligent preparation ... on the part of the attorney for the Government." We disagree. The Government is not seeking more time to prepare for trial. It is defense counsel who contends that they do not have enough time to prepare.[3] Their interpretation of § 3161(h)(7)(C) distorts its meaning and finds no support in any case cited to this court.
There are presently sixty-four days to go under the Speedy Trial Act before this case must be called for trial. The court within those sixty-four days is permitted under appropriate circumstances to exclude additional time. Defendant's motion to dismiss based what he perceives will be a future violation of the Speedy Trial Act is without merit.
II
We next consider the defendant's argument that his right to a speedy trial under the Constitution has been infringed. The Sixth Amendment guarantees in relevant part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial[.]" U.S. Const. amend. VI. Compliance with the Speedy Trial Act, of course, does not bar a constitutional challenge based on the denial of a speedy trial. See 18 U.S.C. § 3173 ; see also *339 In re Grand Jury Investigation, 600 F.2d 420, 427 n.26 (3d Cir. 1979).
Unlike other rights guaranteed under the Constitution, the right to a speedy trial exists not only for the benefit of the accused but also for the benefit of society in general which has an interest in having trials take place promptly. Barker v. Wingo, 407 U.S. 514, 519-21, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Delay does not per se prejudice an accused. It is sometimes a defense tactic and can work to the accused's advantage. Id. at 521, 92 S.Ct. 2182.
The Supreme Court has observed that the question of a speedy trial is a fact-intensive inquiry and that it is "impossible to determine with precision when the right has been denied." Id. We must analyze the issue "in the particular context of the case." Id. at 522, 92 S.Ct. 2182. When the defendant is deprived of his constitutional right to a speedy trial, "the only possible remedy" is dismissal of the indictment. Id. The Supreme Court has characterized this remedy as "unsatisfactorily severe ... because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." Id.
To aid in the constitutional speedy trial analysis, the Supreme Court in Barker laid down four factors which must be considered. They are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. 2182.
We begin with the length of the delay which the Supreme Court has characterized as "to some extent a triggering mechanism." Id. The issue of delay is a two-step inquiry. The first step requires the court to determine whether there is sufficient delay between the arrest or indictment and the trial so as to be deemed presumptively prejudicial. Here the defendant was indicted on October 11, 2016 and filed his motion to dismiss the indictment on September 27, 2017, with the trial at the time of the filing of the motion scheduled for October 2, 2017. Post-accusation delay is generally found to be presumptively prejudicial when the delay approaches one year. Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) ; see also Hakeem v. Beyer, 990 F.2d 750, 760 (3d Cir. 1993). The Supreme Court has been quick to point out that a delay of this length simply means that it will trigger a full inquiry into the Barker factors. Doggett, 505 U.S. at 652 n.1, 112 S.Ct. 2686 ; see also United States v. Velazquez, 749 F.3d 161, 174 (3d Cir. 2014). Such delay does not signify by itself that the defendant's constitutional right to a speedy trial has been denied. Hakeem, 990 F.2d at 759-60. Here nearly one year had passed between the time defendant was indicted and the date the matter was scheduled for trial. Thus we need to make further inquiry into the Barker factors, including the length of delay. In doing so, the court must engage in "a balancing test, in which the conduct of both the prosecution and the defendant are [sic] weighed." Barker, 407 U.S. at 530, 92 S.Ct. 2182.
We start by considering the length of the delay. It is defined as the time between arrest or indictment, whichever occurs first, and the commencement of the trial. United States v. Battis, 589 F.3d 673, 678 (3d Cir. 2009). Here, as noted above, the defendant was indicted on October 11, 2016. The defendant's motion to dismiss for violation of his constitutional right to a speedy trial was filed just shy of a year after the Grand Jury issued the indictment. Defense counsel contended in the motion to dismiss and at the hearing *340 that they cannot be ready for trial for at least another year as a result of the dilatory discovery production. According to their calculation, the delay between indictment and trial would be approximately two years. We must determine what is an appropriate time for the start of any trial in light of the present circumstances so that we can measure the length of the delay for Barker purposes.
We reject the contention that an additional year will be necessary. As discussed in detail hereafter, the amount of post-August 23, 2017 discovery is estimated to be equal in size to what was produced previously and considered approximately 1,500,000 pages plus 900,000 emails. Counsel has already accomplished a great deal of preparation with the pre-August 23, 2017 production. Indeed they had advised the court that they would be ready for trial on October 2. We acknowledge that some reanalysis of the existing work will inevitably be required due to the receipt of the post-August 23, 2017 discovery and that review and analysis of the new information will also demand additional time. The use of search terms with the assistance of the defense's computer expert will facilitate these efforts. Significantly, there are now two highly-experienced defense lawyers in the case when initially there was only one. Based on the existing record and keeping in mind the public interest, we find that an additional seven months after September 11, 2017, the date the final production of recent discovery was completed, is sufficient time for defense counsel to prepare. This would mean a trial date of April 11, 2018. The length of the delay between the indictment and this trial date would be eighteen months.
The defendant's motion to dismiss focuses on what the defendant characterizes as the Government's bad faith dilatory production of discovery. This brings us to the second Barker factor which directs the court to evaluate the reason for the Government's delay in producing its discovery. The burden of proof rests on the Government to justify any delay. United States v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014) ; Battis, 589 F.3d at 680.
As the Supreme Court has explained, the propriety of any delay can differ depending on the type of criminal case. See Barker, 407 U.S. at 530-31, 92 S.Ct. 2182 ; see also Vermont v. Brillon, 556 U.S. 81, 89, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009). Delay, for example, may be unacceptable for "an ordinary street crime" but justifiable for a "serious, complex conspiracy charge." Barker, 407 U.S. at 531, 92 S.Ct. 2182. In analyzing this factor, we must determine whether the Government's delay in making discovery available was a deliberate attempt to delay the trial to impede the defense, whether the Government was simply negligent, or whether the Government's delay was based on some valid reason. The more flagrant the conduct on the part of the Government and the greater the length of the delay, the more likely is the presumption of evidentiary prejudice to the defendant. Doggett, 505 U.S. at 656-57, 112 S.Ct. 2686. We must subtract the amount of the delay caused by the defendant from the amount of delay caused by the Government. Vermont, 556 U.S. at 89-90, 129 S.Ct. 1283 ; see also Battis, 589 F.3d at 680.
It is undisputed that this case has involved an extraordinary volume of discovery. The Government began its production to defendant, pursuant to its obligations under Rule 16 of the Federal Rules of Criminal Procedure, a month after the indictment was returned and continued to provide voluminous discovery at various intervals for many months thereafter:
*341 Date Pages of Discovery November 10, 2016 1,000,000 (emails)[4] November 10, 2016 469,219[5] November 21, 2016 27,296 December 16, 2016 929 December 29, 2016 259,554 January 23, 2017 66,528 February 15, 2017 13,084 March 13, 2017 717 May 8, 2017 82,274 May 19, 2017 46 June 9, 2017 50,298 July 18, 2017 222 August 10, 2017 9,334
[Editor's Note: The preceding image contains the reference for footnote[4] ,[5] ].
Thus through August 10, 2017, the Government had produced approximately 979,501 pages of discovery as well as approximately 1,000,000 emails, all in electronic format. All but between 2,000 and 3,000 pages were in the possession of the Government pre-indictment. Even with this enormous production on a rolling basis, the defendant's counsel had advised the court that as of mid-August she was prepared to go to trial on October 2.
All seemed to be well in hand until the Government requested and the court scheduled a conference in Chambers with counsel on August 23, 2017. It was at that conference that the Government revealed for the first time that it had failed to turn over significant electronic data that had been in its possession since March 2013. The data concerned Shulick's involvement with DVHS and the contracts of DVHS with the School District of Philadelphia. Much of the indictment focuses on the alleged criminal conduct of the defendant vis-à-vis these entities.
The Government transmitted this discovery to defense counsel two days later on August 25, 2017. At least part of this electronic data turned over by the Government was inaccessible by the defense, and the Government remedied this issue by sending an accessible replacement in its final production on September 11, 2017. As noted, this huge production precipitated the pending motion to dismiss. This discovery, conservatively speaking, is estimated to contain an additional 1,500,000 pages of material plus some 900,000 emails.
The defendant first complains about improper delay caused by the Government's rolling production of materials for the interval from a month after indictment up until mid-August 2017. The volume and dates of the production are set forth in detail above. The Department of Justice guidelines provide that "prosecutors should consider making Rule 16 [of the Federal Rules of Criminal Procedure] materials available as soon as is reasonably practical but must make disclosure no later than a reasonable time before trial." It is likewise the policy of the United States Attorney's Office for the Eastern District of Pennsylvania that discovery should be *342 produced as soon as possible after indictment. Neither Rule 16 nor Department of Justice or local policy fixes specific deadlines for discovery production. This is for good reason. One size does not and cannot fit all. Production of discovery in an ordinary case with few documents or other material is one thing. The situation is quite different when the discovery production is of the magnitude required in a complex case such as this one, involving an investigation spanning a number of years, an indictment containing eleven counts, and material amounting to more than 2,000,000 pages. We recognize that it is not always practical to accomplish the production of discovery in a case like this as quickly as in a simpler matter.
Nonetheless, it is troubling that the Government took so long to meet its obligations here and certainly stretched beyond proper bounds any reasonable interpretation of Rule 16 and the relevant Department of Justice and local policies. All but a few thousand pages were in the hands of the Government before Shulick was indicted. An egregious example of the dilatory discovery production related to the three tax counts against Shulick. The tax charges had been investigated and a special agent report had been completed by the summer of 2014. The Justice Department in December 2014 had approved the bringing of charges. Yet the discovery concerning these charges was not provided to the defense until January 23, 2017, slightly over three months after Shulick had been indicted and less than four months before the scheduled trial. Based on the rolling nature of the Government's production, the initial May 8, 2017 trial date soon became unrealistic.
The FBI case agent had been involved for a number of years in the wide-reaching investigation of Shulick and had detailed knowledge of the discovery from the investigation. Yet, the record establishes that the FBI case agent's desultory performance in identifying and assembling the discovery from the time of the indictment to mid-August 2017 to make it ready for production by the AUSA was inadequate and unacceptable.[6] The Government, including those supervising the FBI case agent, have provided no justifiable reason for what occurred.
Our finding that the Government has fallen short in its duty with respect to its pre-August 23, 2017 rolling production of discovery does not end our inquiry. Defense counsel, while complaining at times about the voluminous and rolling nature of the pre-August 23, 2017 discovery, never once claimed any constitutional violation. Instead, counsel took a different tack. Counsel sought several continuances of the trial date so as to have more time to prepare. The court granted each request, first moving the trial date from May 8, 2017 to September 19, 2017 and then to October 2, 2017. The defense, we reiterate, acknowledged it would be ready for trial on that date.
The defense cannot now have it both ways. It was fully aware of the Government's plodding production prior to August 23, 2017. Counsel cannot seek and obtain continuances to give the defense more time to be ready for trial because of the Government's dilatory behavior and then after the fact reverse course and claim that the indictment should be dismissed *343 on the ground that defendant's right to a speedy trial under the Constitution has been infringed because of that behavior. Courts have cautioned against this sort of tactic and have particularly frowned upon it when the right is not asserted until the eve of trial. United States v. Loud Hawk, 474 U.S. 302, 314-15, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) ; see also Hakeem, 990 F.2d at 765. In assessing the reason for the delay for speedy trial purposes, we will not weigh against the Government its obvious snail-like discovery production prior to August 23, 2017.
The production of discovery by the Government after August 23, 2017 stands on a different footing. At this point, the defendant moved to dismiss the indictment for denial of his constitutional right to a speedy trial. The defense acted promptly after first learning of the Government's possession of this material and did not simply seek another continuance.
This production of electronic data which contained a massive amount of material approximately equal in size to what had been produced previously was not made available to the defense until approximately eleven months after the October 11, 2016 indictment was filed. The unhappy story of what happened consumed many hours of the recent hearing.
In February 2012, the FBI obtained several warrants to search the law office of Shulick and the residence of his co-conspirator Chaka Fattah, Jr. At that time the FBI also sent a letter to a company known as I.T. Solutions, a third party vendor which Shulick had engaged to house the servers of DVHS. The FBI directed I.T. Solutions to preserve whatever electronic data that it had relating to DVHS. Shulick had owned and controlled DVHS, and his activities related to the management of DHVS and his contracts with the School District of Philadelphia were relevant to the FBI's investigation against him.
About a year later, in March 2013, the FBI, with Shulick's consent, obtained from I.T. Solutions a copy of the material on the servers and forwarded it to the FBI's Regional Computer Forensic Laboratory ("RCFL") in King of Prussia, Pennsylvania. It is the responsibility of the RCFL to make accessible to the FBI information that the FBI obtains in an electronic format during its investigations.
At this time the FBI was conducting an investigation not only of Shulick and Chaka Fattah, Jr. but also a related investigation of Congressman Chaka Fattah, Sr., the father of Chaka Fattah, Jr. These investigations were extensive and complex.[7] The FBI had assigned the case number 194B-PH-101890 ('890) to the investigation of Shulick and Chaka Fattah, Jr. and the case number 58C-PH-2747446 ('446) to the Chaka Fattah, Sr. investigation. The RCFL, however, used a different set of identification numbers for the matters it was processing even though the matters also carried FBI numbers. The data server of DVHS and the email server of DVHS obtained from I.T. Solutions were originally logged with the RCFL in March 2013 under the same RCFL number, and incorrectly under the FBI number '446, which *344 was the FBI number of the Chaka Fattah, Sr. investigation, not the investigation of Shulick and Chaka Fattah, Jr. The email server was initially unreadable by the RCFL. The FBI case agent then submitted to the RCFL a new copy of the email server that he had obtained from I.T. Solutions. This new submission of the email server was logged by the RCFL with a new identifying number and marked with FBI case number '890.
The RCFL placed the information from the data server of DVHS and the information from the email server of DVHS it had received from the FBI case agent on its internet-based platform so that it could be accessed by the FBI for its investigations. During the several months after March 2013, the FBI engaged in keyword searches of both servers. At the request of the FBI, the RCFL placed the keyword searched documents from the email server on a thumb drive and the keyword searched documents from the data server on a separate thumb drive. The RCFL sent a copy of the servers and the thumb drives to the FBI case agent in August 2013.
More than three years later, on October 18, 2016, a week after Shulick was indicted, the FBI case agent filled out and forwarded to the RCFL an RCFL service request form to obtain the DVHS information received from I.T. Solutions in March 2013. The FBI case agent sought this information in order to turn it over to Shulick's counsel. The form failed to include the relevant RCFL file numbers and contained FBI identification number '890 rather than the FBI number '446 which the FBI had originally used on the receipt it prepared when it turned over to the RCFL in March 2013 the servers housed by I.T. Solutions. The FBI case agent also separately emailed the forensic examiner of the RCFL in October 2016 requesting copies of the data. The email attached documentation containing the relevant RCFL file numbers. The RCFL forensic examiner focused on the request form and not on the email. It was the policy of the RCFL to rely only on the information on its service request form. The RCFL forensic examiner sent back only the email server of DVHS and not the data server of DVHS. The FBI case agent did not check what the RCFL examiner sent him, and as a result the AUSA sent defense counsel on November 10, 2016 only the information on the email server.
The series of careless errors that resulted in the failure to provide defense counsel with the information on the DVHS data server specifically resulted from the mix up by the FBI case agent of FBI and RCFL identification numbers and the carelessness of the FBI case agent and the RCFL forensic examiner in requesting and exchanging electronic data. The errors began when the FBI case agent used the FBI number '446 for the Chaka Fattah, Sr. investigation instead of the Shulick and Chaka Fattah, Jr. FBI case number '890, when transmitting the DVHS servers to the RCFL back in March 2013. As noted, the RCFL designed its own file numbers for the various requests to it for assistance. Several years later in October 2016, the FBI case agent did not fill out the RCFL service request form correctly and the RCFL failed to review carefully a separate email the FBI case agent sent requesting the data server.[8] When the email server was sent by the RCFL forensic *345 examiner to the FBI case agent in early November 2016, the FBI case agent did not carefully review what was sent and thus did not notice that the data server had not been included.
It was not until August 21, 2017, a little over a month before trial was to begin on October 2, that the FBI case agent finally realized that the data server had not been provided to defense counsel in November 2016. He immediately advised the AUSA assigned to try this case of the omission. The AUSA, in turn, sought and obtained a conference with the court and defense counsel on August 23, 2017. The Government for the first time revealed the existence of unprovided discovery and then promptly produced it.[9]
This serious shortcoming in not promptly providing relevant information to defense counsel, pursuant to its discovery obligations, until after August 23, 2017 was certainly not the Government's finest hour. The FBI case agent and the forensic examiner both acted unreasonably and below the required standard of care. Their negligence and thus the Government's negligence in failing to produce the DVHS data until after August 23, 2017 are responsible for the entire delay of eighteen months between the indictment and the new targeted trial date. We find that none of this delay was caused by the defendant. The continuances up until October 2, 2017 sought by defense counsel and granted by the court were legitimate in light of the Government's inexcusable rolling discovery production. See Vermont, 556 U.S. at 89-90, 129 S.Ct. 1283 ; see also Battis, 589 F.3d at 680. We reject the Government's characterization of what happened as mere inadvertence. The Government has not met its burden of proof to justify this delay. Nonetheless, contrary to the defense assertion, we find no evidence that the Government acted in bad faith or deliberately attempted to delay the trial or to impede the defense by withholding information.
The third Barker factor concerns the defendant's assertion of his right to a speedy trial. As Barker observed, the "failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532, 92 S.Ct. 2182. The courts have recognized that sometimes it is to a defendant's advantage to delay the trial. Id. at 521, 92 S.Ct. 2182. Any maneuvering by the defendant for this purpose weighs against him in any constitutional speedy trial analysis. Barker dictates that "deprivation of the right to a speedy trial does not per se prejudice the accused's ability to defend himself." Id. (emphasis added).
Defense counsel, as we have narrated, was well aware of the voluminous but piecemeal production prior to mid-August 2017. See Velazquez, 749 F.3d at 182. We find that seeking and obtaining continuances of the trial until October 2 and not raising any constitutional claim of denial of a speedy trial before September 27 undercuts any claim that defendant's right to a speedy trial was violated based on the Government's rolling production of discovery up to mid-August 2017.
On the other hand, the filing of the motion to dismiss for a violation of defendant's right to a speedy trial is timely to the extent it is predicated on the production of the DVHS data server after August 23, 2017. Further, we find that the defendant has not sought to delay the trial for *346 tactical advantage with respect to the post-August 23, 2017 production of discovery.
The fourth and final Barker factor is prejudice to the defendant. There are three interests of the defendant which the Speedy Trial Clause was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense is impaired. Barker, 407 U.S. at 532, 92 S.Ct. 2182. The burden of proof is on the defendant to establish prejudice. Hakeem, 990 F.2d at 760.
The prevention of oppressive pretrial incarceration is not an issue here. Shulick has been on bail since his first appearance and has served no time in detention.
There was evidence produced at the recent hearing about the anxiety and concern of the accused. The defendant's psychiatrist, who treated him from June 2012 until the end of May 2017, testified that defendant suffers from severe anxiety with certain peaks as well as from depression, insomnia, and suicidal ideation, all related to his legal situation. Panic attacks have also resulted. The psychiatrist had prescribed various medications to help him cope. The defendant's wife confirmed that the Government's accusations were causing Shulick extreme anxiety, depression, and panic attacks. She explained that he was also under stress due to having difficulty hiring staff for his law office because of the unfavorable publicity emanating from his indictment. The situation has put strain on their family life. In addition, his wife noted that he regularly sees a psychologist and has done so since prior to 2012.
Finally, we must determine whether the defendant was prejudiced because his defense was impaired by any delay. This is the most serious of the elements of prejudice. Doggett, 505 U.S. at 654, 112 S.Ct. 2686. In Doggett, the Supreme Court stated that the defendant may, of course, offer specific proof which demonstrates prejudice, but such proof, which is often difficult to establish, is not essential in every case claiming a speedy trial violation. Id. at 655, 112 S.Ct. 2686. If there is excessive delay, prejudice to the defendant's ability to defend himself can be presumed. Id. However, presumptive prejudice cannot carry the day without regard to the other Barker factors. Barker, 407 U.S. at 533, 92 S.Ct. 2182.
Our Court of Appeals has held that a delay of fourteen months between an arrest and trial is insufficient to establish that presumptive prejudice exists with respect to the impairment of a defense. Hakeem, 990 F.2d at 764. In contrast, prejudice to the defense will be presumed where there is a forty-five month delay, even if it can be argued that only thirty-five months is attributable to the Government. Battis, 589 F.3d at 683. The date of the Shulick indictment was October 11, 2016. The motion to dismiss was filed on September 27, 2017, less than a year later. Defense counsel contends that it would take another year to be ready for trial. We have found that it is reasonable to start the trial on April 11, 2018, eighteen months after the defendant was indicted and about seven months after the post-August 23, 2017 discovery production was completed. Even if all of the discovery had been produced in a timely manner, it is unrealistic to believe that the action could have been ready for trial before May 2017 at the earliest.[10] Considering the complexity of this case *347 with eleven counts, including a charge of conspiracy and with upward of two million pages of discovery, we find that the delay between the indictment and the now-targeted trial date is insufficient to presume prejudice to the defendant.[11]
This leaves the court to consider specific evidence of prejudice. The defendant merely argues that because of the passage of time until a realistic trial date the memories of witnesses have or will have faded, and witnesses have or will become unavailable. No particulars are cited. It is well-established that general allegations about the dimming of memory or the unavailability of witnesses, absent excessive post-arrest or post-indictment delay, do not suffice to establish prejudice. Velazquez, 749 F.3d at 191 ; see also Loud Hawk, 474 U.S. at 315, 106 S.Ct. at 656. Consequently, the defendant has not established through presumptive prejudice or specific evidence of prejudice that his defense will be impaired by a trial starting on April 11, 2018.
This brings us to the final step, the balancing of the four Barker factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.
The delay of eighteen months between the indictment on October 11, 2016 and a trial to begin on April 11, 2018 is not in and of itself excessive given the complexity and volume of discovery in this case. The delay is only slightly longer than fourteen months in Hakeem which our Court of Appeals has held not to be presumptively prejudicial and much shorter than a forty-five month delay which is presumptively prejudicial. See Battis, 589 F.3d at 683. The delay factor weighs against the defendant.
The Government's negligence that resulted in producing the discovery forth coming after August 23, 2017 weighs heavily in favor of the defendant. The Government's contention that the delay was caused only by inadvertence is without merit.
The defendant did not timely assert his right with respect to any prejudice he may have suffered as a result of the Government's rolling discovery production pre-August 23, 2017 since he was well aware of the nature of that production and simply sought continuances of the trial as his remedy. On the other hand, the defendant timely asserted his right to a speedy trial in September 2017 with respect to the Government's delay in producing the materials it revealed for the first time on August 23, 2017. The defendant's motion was not for tactical purposes. This Barker factor weighs in favor of the defendant.
Finally, we turn to the factor of prejudice as a result of the delay. Shulick was on bail from the beginning and thus has suffered no harm from pretrial detention. As a result of the indictment and the accompanying adverse publicity he has been afflicted with severe anxiety and stress, takes medication prescribed by a psychiatrist, has had trouble obtaining staff for his law practice, and experienced stress in his family relationships. Such collateral consequences often flow from a criminal indictment, and the effect will necessarily continue over a longer period in a complex case such as this. Regardless of whatever empathy may be due Shulick, this element *348 of the prejudice factor only slightly favors him.
Significantly, there is no evidence that the delay occurring here will impair Shulick's defense. As noted above, presumptive prejudice does not apply, and the defendant has come forward with no specific evidence of prejudice. The general fading of the memories of witnesses or the general averment of the absence of witnesses as time passes without more is not sufficient to cause prejudice when the delay is no greater than it is here. Velazquez, 749 F.3d at 191 ; see also Loud Hawk, 474 U.S. at 315, 106 S.Ct. at 656. The defendant has not met his burden of proof. The prejudice factor, after considering all of its elements, weighs against the defendant.
In conclusion, the length of the delay here has not been excessive given the volume of discovery and the complexity of the case. The defendant has not shown that he has suffered prejudice after considering all of the relevant elements and particularly has not established any impairment of his defense. These factors weigh against dismissal and prevail over both the Government's negligence, albeit unacceptable, and the defendant's timely assertion of his right to a speedy trial after the Government's revelation on August 23, 2017 about unproduced discovery. The balancing of the Barker factors clearly tips the scales in favor of the Government. Barker, 407 U.S. at 530, 92 S.Ct. 2182.
Accordingly, we will deny the defendant's motion to dismiss insofar as he claims a violation of his right to a speedy trial as guaranteed under the Sixth Amendment to the Constitution.
III
Defendant contends that we must take into account events that occurred prior to the indictment in our constitutional speedy trial analysis. In effect, the defendant argues that his constitutional right to a speedy trial has been denied because of pre-indictment delay. It appears that the investigation into Shulick and Chaka Fattah, Jr. began before 2012. The defendant does not dispute that the various charges in the indictment have been brought within their respective statutes of limitations. Instead, he asserts that the Government purposely delayed the indictment until the last minute and that he has been prejudiced as a result.
The Supreme Court has held that the constitutional right to a speedy trial under the Sixth Amendment is triggered only when the defendant becomes an accused, that is when he or she is arrested or indicted, and has no applicability before that point. United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) ; United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The statute of limitations is the mechanism which shields against pre-indictment and pre-arrest delay. Lovasco, 431 U.S. at 789, 97 S.Ct. 2044. Thus, pre-indictment or pre-arrest delay is irrelevant under the Speedy Trial Clause of the Constitution.
The defendant cites Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). This case is inapposite. It involved the arrest of a defendant who was not indicted for another twenty-two months. His trial, which involved the charge of auto theft, did not occur for another twelve months. The Supreme Court held that the lower courts had erred in not considering the period between his arrest and his indictment in determining whether his right to a speedy trial had been violated. Id. at 64-65, 96 S.Ct. 303. The Court clarified its decision in Marion: "[I]t is either a formal indictment or information or else the actual restraints imposed by the arrest and holding to answer *349 a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Dillingham, 423 U.S. at 65, 96 S.Ct. 303 (citing Marion, 404 U.S. at 313, 92 S.Ct. 455 ).
Unlike the circumstances in Dillingham, Shulick was not subject to arrest prior to his indictment. In an attempt to find parallels between this case and Shulick's situation, the defense points to the prior indictment and superseding indictment of Chaka Fattah, Jr. which referred to Shulick as "Person 1." The defense also emphasizes that prior to Shulick's indictment at the trial of Chaka Fattah, Jr. in October and November 2015 the Government identified Shulick by name as having participated in criminal activity. Contrary to the view of the defense, such references are not equivalent to an arrest or formal indictment of Shulick so as to start the running of time under the Speedy Trial Clause of the Constitution. The clock did not begin to tick until Shulick's indictment on October 11, 2016.[12]
The defendant has not asserted any violation of his right to due process under the Fifth Amendment. Even if he had and we consider what occurred prior to indictment, the defendant's argument is not compelling. See Marion, 404 U.S. at 325-26, 92 S.Ct. 455. This is a very complex document-intensive case which involved an extensive pre-indictment investigation with many parts. There is no evidence that the prosecution deliberately delayed the indictment to disadvantage Shulick or that he has suffered actual prejudice. While the tax counts referenced above may have been ready for submission to the grand jury for some period of time before his indictment, this action involves much more than taxes. There are eight other counts. The record says nothing about their ripeness before the date of the indictment. We will not impose on the Government an obligation to bring separate indictments on individual charges whenever the court or the Government may deem them to be ready. It would be a waste of government and judicial resources to have to deal with multiple indictments and trials and would be an improper intrusion of the courts into the prosecutorial function. Lovasco, 431 U.S. at 790, 97 S.Ct. 2044. Adopting the defense argument would also undermine Rule 8 of the Federal Rules of Criminal Procedure, which provides for joinder of offenses and defendants. See Fed. R. Crim. P. 8. Absent highly unusual circumstances not present here, the timing of an indictment is the Government's call as long as various charges are within the statute of limitations. See United States v. Gouveia, 467 U.S. 180, 192, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984).
Defendant's argument urging the court to consider pre-indictment delay in the analysis of his right to a speedy trial under the Constitution is without merit.
IV
Defendant's last argument is that the indictment should be dismissed with prejudice under Rule 48(b) of the Federal Rules of Criminal Procedure because of unnecessary delay. This rule provides:
(b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
*350 (1) presenting a charge to a grand jury;
(2) filing an information against a defendant; or
(3) bringing a defendant to trial.
Fed. R. Crim. P. 48(b).
Rule 48 merely incorporates the court's inherent power to dismiss an action and admittedly sweeps more broadly than the constitutional right to a speedy trial. It encompasses the power to dismiss for want of prosecution. United States v. Huntley, 976 F.2d 1287, 1291-93 (9th Cir. 1992). Rule 48(b) should be invoked only in extreme circumstances. Id. While the court has discretion to dismiss under the rule, we find no basis in the record to support our exercise of it here. The Government's negligence in causing a delay of the trial when the relevant delay is eighteen months, while surely the proper subject of adverse criticism, does not amount to extreme circumstances.
The facts in this case are very different from the facts in United States v. Zabady, 546 F.Supp. 35 (M.D. Pa. 1982), on which the defendant relies. There, the evidence established that it was the Government which sought a significant delay because it was not ready for trial.
The motion of defendant to dismiss the indictment based on Rule 48(b) will be denied.
ORDER
AND NOW, this 14th day of November, 2017, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:
(1) the motion of the defendant to dismiss the indictment (Doc. # 63) is DENIED;
(2) the trial in this action is continued until April 11, 2018 at 10:00 a.m. on the ground that the ends of justice served by granting this continuance outweigh the best interest of the public and defendant in a speedy trial, specifically the case is so unusual or complex due to the nature of the prosecution that it is unreasonable to expect adequate preparation by defense counsel for the trial itself within the time limits otherwise set by the Speedy Trial Act. See 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(ii) ; and
(3) the Sixth Scheduling Order (Doc. # 60) is VACATED.

Defense counsel was out of town and attended the meeting by telephone.

On February 24, 2017, defense counsel also filed a motion to dismiss Counts 7 and 8 of the indictment or in the alternative a motion to sever for trial Counts 7 and 8 from the remaining counts. The court denied the motion to dismiss Counts 7 and 8 on May 23, 2017 and denied the motion to sever Counts 7 and 8 on June 5, 2017. This time, of course, was also excluded under the Speedy Trial Act. See § 3161(h)(1)(D).

The defendant was represented on the docket by one attorney, Hope C. Lefeber, Esq., from the date of his initial appearance until August 14, 2017, when a second attorney, Ann C. Flannery, Esq., entered her appearance as co-counsel.

The emails were on a hard drive.

The remaining pages were produced on a disc.

As we will discuss in greater detail, the FBI case agent in the Shulick investigation was also the FBI case agent in the related Chaka Fattah, Jr. investigation, the alleged co-conspirator of Shulick, and the Chaka Fattah, Sr. investigation. Thus the FBI case agent had knowledge of those investigations as well.

Chaka Fattah, Jr., who represented himself, was indicted on July 29, 2014 and a superseding indictment was filed on March 3, 2015. United States v. Chaka Fattah, Jr., No. 14-409 (E.D. Pa. July 29, 2014). His trial occurred over a three week period from October 15 to November 5, 2015. Congressman Chaka Fattah, Sr. and four others were indicted on July 29, 2015. United States v. Chaka Fattah, Sr., No. 15-346 (E.D. Pa. July 29, 2015). The trial began with jury selection on May 2 and May 3, 2016. The trial then took twenty-two days from May 17 to June 21, 2016.

As noted, the readable email server and the data server had been logged under separate RCFL numbers because the original email server that was logged together with the data server was unreadable. The FBI obtained a new copy of the email server from I.T. Solutions and this was logged by the RCFL with a new RCFL number.

The evidence establishes that the original DVHS server no longer existed and that I.T. Solutions no longer had this data in its possession at the time Shulick was indicted. The only entity that continued to have the information was the FBI and its RCFL.

This fact, of course, did not absolve the Government from its obligations promptly to produce discovery, including the DVHS data server.

The defense has argued that it would need two years to prepare for trial in light of the Government's post-August 23, 2017 discovery production. We have rejected this position. In any event, we find that a two-year delay between the indictment and trial would not be excessive under the circumstances.

Defendant also relies on an Eleventh Circuit decision, United States v. Ingram, 446 F.3d 1332 (11th Cir. 2006), which is not binding on this court. In our view, its analysis is inconsistent with the Supreme Court's decisions in United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) and United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).